### JOHNSON *against* HUNTINGTON.

Where an execution, which had been partially satisfied, by a levy on the debtor's property, was returned into the clerk's office, and he, upon the application of the creditor to him, issued an *alias*, with his certificate of the balance due indorsed thereon, without transcribing thereon the return of the officer on the original; it was held, that such *alias* was a valid precept.

Where the return on an execution levied on land in the town of *W.*, stated,

Johnson
*v.*
Huntington.

that the creditor appointed *A.* " an indifferent freeholder," to be an appraiser, and the debtor neglecting to appoint or choose one, the officer applied to a justice of the peace, who appointed *B* and *C,* " indifferent freeholders of said *W.*" to be appraisers ; and the certificate of the appraisers annexed to the return, was dated " *W.* county, ss. *W.*" and proceeded thus—" We, the undersigned, freeholders of the     *W.*," it was held, 1. that the steps required by law to authorize the appointment of *B* and *C* by the justice, were sufficiently shewn ; 2. that it sufficiently appeared from the return, that *A* was an inhabitant of the town of *W.*

The statute disqualifications of judges from relationship to a party, are applicable to appraisers of land taken by execution.

Therefore, where the wife of an appraiser was mother of the wife of the creditor, it was held, that such appraiser was not an indifferent freeholder.

Where a writ of attachment in favour of *A* and *B,* and *D,* as executor of *C,* brought, after the death of *C,* on a note payable to *A, B* and *C,* against the maker, was served on his real estate, and after the return of such writ, it was amended, by erasing the name of *D,* and leaving it in favour of *A* and *B,* as survivors of the payees ; it was held, that such amendment was allowable, and the lien created by the attachment was not thereby dissolved.

T*HIS* was an action of ejectment for a tract of land in the town of *Windham.*

The cause was tried at *Brooklyn, August* term, 1837, before *Bissell,* J.

The plaintiff claimed title to the demanded premises, by virtue of the levy of an *alias* execution in his favour against *Gurdon Huntington,* formerly the undisputed owner. Part of the plaintiff's judgment had been satisfied, by the levy of another execution, previous to the issuing of the *alias ;* and the latter did not contain any of the proceedings under the former, except the indorsement of the clerk thereon, in these words : " A former execution, of which this is an *alias,* is returned, having sundry indorsements thereon, leaving due on this execution the sum of 454 dollars, 70 cents." [Signed by the clerk of the court.]

The defendant claimed, that this *alias* execution should have contained the proceedings on the former execution, as indorsed thereon ; and that the clerk of the court had no authority to ascertain the balance of the judgment remaining unsatisfied, and then to issue an *alias,* with merely his certificate of such balance thereon. The court overruled this objection, and instructed the jury, that the *alias* in question was in proper and legal form.

The officer levying the *alias* execution returned thereon,

that with it he repaired to the usual place of abode of said *Huntington*, and made demand of the several sums due thereon, and of his fees, which he neglected to pay; that for want of the personal estate of the debtor, he levied said execution upon the demanded premises and certain other real estate, described in the return; that he applied to the creditor, who appointed *Joel W. White*, an indifferent freeholder, to be an appraiser, and the debtor neglecting to appoint or choose one or more appraisers, he applied to *John Baldwin*, esq., a justice of the peace, who designated and appointed *B. Perry* and *C. Newcomb*, indifferent freeholders of said *Windham*, to be appraisers on said execution; that he caused these appraisers to be sworn; and that they, having viewed the lands levied upon, gave to him their certificate in writing, as follows: "*Windham* county, ss. *Windham, September* 18th, 1834. We, the undersigned, freeholders of the          *Windham*, having been appointed," &c. The certificate then proceeded to give a description of the lands levied upon, and the appraisals thereof. The return of the officer did not contain any other averment of a demand of the debtor, on the execution; nor that he was in his precincts, though he was described, in the execution, as being "of *Windham*." Nor did the return show any application to the debtor to appoint or choose an appraiser, or state that *J. W. White* was of the town of *Windham*, except as above-mentioned. The defendant thereupon claimed, and prayed the court to instruct the jury, that the return was insufficient to transfer the title of the premises to the plaintiff. The court instructed the jury that the return was sufficient.

The demanded premises had been attached by the plaintiff; but they had been previously attached, in two other suits, against the same debtor; and after the plaintiff's attachment and before his levy, they had been legally set off on the executions of the first attaching creditors, unless the levy in one case was invalid, and the proceedings in the other, were irregular, on the following grounds.

One of the executions was in favour of *C. Lee. John Baldwin*, esq. was one of the appraisers; and he, at that time, was the husband of *Lee's* wife's mother. And the plaintiff claimed, that he was thereby disqualified to be an appraiser. The court so instructed the jury.

The other execution was in favour of *Sarah* and *Susannah*

<div style="text-align:right">*Windham,*<br>July, 1838.

Johnson<br>*v.*<br>Huntington.</div>

*White.* The suit, in which it issued, was brought upon said *Huntington's* note, to *Sarah, Susannah* and *Mary White;* and when the real estate in question was attached, the writ required the defendant "to answer to *Sarah* and *Susannah White,* and to *Elisha White,* executor of *Mary White,* deceased." The note was declared on as being a promise "to said *Sarah, Susannah* and *Mary White,*" averring that "the defendant had not paid said note to the plaintiffs, nor to said *Mary,* when in life, nor to said *Elisha,* since her death ;" and concluding "to the damage of the plaintiffs and said *Elisha White,* as executor," &c. After this writ was returned and entered in the docket of the court, it was amended, by erasing the name of *Elisha White,* leaving it in favour of " said *Sarah* and *Susannah,* as survivors of said *Mary,* deceased." Upon this writ, so amended, judgment was rendered in their favour as survivors. The plaintiff claimed, and prayed the court to charge the jury, that by such alteration, the lien created by the attachment was dissolved ; and so the plaintiff's title by his levy, had priority to the levy of the last-mentioned execution. The court charged the jury in conformity to this claim of the plaintiff; and the jury returned a verdict in his favour. The defendant moved for a new trial for a misdirection.

*Goddard* and *Strong,* in support of the motion.

*Child* and *C. F. Cleaveland,* contra.

WILLIAMS, Ch. J. As it will not be necessary to consider the objections to the defendant's title, if the plaintiff has none, it may be proper to inquire, in the first place, into the plaintiff's title.

It was objected, that his execution was irregular, because there had been a previous execution for the same debt, upon which payments had been made and indorsed ; and the clerk, having ascertained the balance due, issued a new execution. This objection must proceed, either upon the ground that no execution can issue after the first, without a motion to the court, or that the clerk should have copied the indorsements upon the former executions. If it is claimed, that no *alias* execution can issue, except upon application to the court, it is in face of a practice, which, it is believed, has always existed

in this state.    This practice has been convenient, and almost <span><em>Windham,</em><br>July, 1838.</span> necessary.    It probably arose from the fact that as our courts are open but a small part of the time in each county, if application for an *alias* execution must be made to the court which granted the original, great delay must arise, pernicious in its effects to the debtor, as well as to the creditor; for although the creditor might first suffer, yet the great delay which must ensue, if he permitted his execution to *run out* (as it is called) would often prevent those kind indulgencies, which are now frequently extended, by the humane creditor; and thus the debtor, as well as the creditor, would be injured, by this course. A practice so uniform and ancient, and which has proved so salutary, and has never, to our knowledge, been abused, we do not feel authorized to disturb.    We incline to the opinion, that the clerk should have copied the indorsements upon the execution, instead of giving a summary of them, and thus settling the amount due upon the execution.    But although that is the more correct course, yet this cannot vitiate the execution.    The result is precisely the same; and if it be correctly computed, the party can suffer nothing, whether the computation be made by the clerk, as in this case, or by the sheriff, as it must have been, had the clerk merely copied the indorsements.

<span style="float:right;text-align:center">Johnson.<br>*v.*<br>Huntington.</span>

It is further objected, that the return of the officer is insufficient, as it does not show that the justice could appoint two appraisers.    The return states, that the debtor *neglected* to appoint.    If the word *neglect* imports something more than the word *omit*, it must be, because it imports that the party had opportunity to do the thing which he omitted to do.    If he did not have such opportunity, he cannot be said to have neglected it.    Unless, therefore, the officer levying the execution, took those steps which the law required towards the debtor, the debtor cannot be said to have neglected to appoint.    We think, therefore, that we must infer that those steps were taken.

It has been said, that this would not be sufficient evidence that a demand at the dwelling-house had been made of the debtor, of money, &c., to satisfy the execution.    That is true; for the law expressly requires, that such demand should be indorsed on the execution.    And besides, as that is the foundation of the whole proceedings of the officer, and as he must give time and place, it is proper and necessary that this fact

*Windham,
July, 1838.*

*Johnson
v.
Huntington.*

should be stated in his return. Still, as the debtor cannot be said to have neglected a thing, which he had had no opportunity to perform, we think it is fair to say, that the officer called upon him to appoint, when he returns *the defendant neglected to appoint.*

It was further objected to the plaintiff's levy, that it did not appear in the return, that *J. W. White,* one of the appraisers, was an inhabitant of the town of *Windham.* Certain it is, that the officer has not so expressly returned. We have, however, decided, that the certificate of the appraisers, incorporated by the officer in his return, is to be considered as part of that return. *Booth* v. *Booth,* 7 *Conn. Rep.* 350. This certificate of the appraisers is dated " *Windham* county, ss. *Windham.*" It proceeds—"We, the undersigned, freeholders of the

*Windham,*" &c. Now, if we strike out the word "the," it will read, we, the undersigned, freeholders of *Windham ;* and as that town is the last antecedent, it must refer to that town ; or if we insert the words " town of," before the word *Windham,* in either case we do not go further than we did in *Peck* v. *Wallace,* 9 *Conn. Rep.* 456. A reasonable construction of this return requires, that one of these readings should be adopted.

We think, therefore, the plaintiff's executions are valid, and that his title must prevail, unless that of the defendant is superior.

This brings us to consider the objection to the defendant's executions. *Lee* was a creditor in one of those executions; and *Baldwin,* one of the apraisers, married the mother of *Lee's* wife. Was he, then, *an indifferent freeholder,* within the statute ? It has been decided, that the same rule is to be adopted with regard to the relationship of appraisers to the parties, as is by law prescribed for judges. There the connection between father and son by nature or marriage, is a disqualification. The wife of *Baldwin,* an appraiser, was the mother-in-law of *Lee,* the creditor. This constituted the former father by marriage to the latter ; of course, within the letter of the statute. The authority read from *Christian's* note to *Blackstone,* applies only to cases of consanguinity. We are, therefore, of opinion, that this appraiser was not indifferent.

An objection of a different character, was made to the other execution, under which the defendant claims ; or rather to the attachment, under which he claims priority. The note

upon which the suit was brought, was a note given to three Misses *White.* One of them being dead, when the suit was commenced, the attorney joined the name of her executor, as a co-plaintiff with the surviving payees. This was clearly irregular, and could not be sustained. The county court, upon motion, allowed the name of this executor to be stricken from the writ ; thus leaving the suit as it should have been originally, a suit in the name of the two surviving payees of the note. The plaintiff claims that such an amendment could not be allowed ; or at least, that it would vitiate the attachment, as it regarded third persons ; and for the purpose of presenting all these questions together to this court, the judge at the circuit so ruled. If this amendment was proper, then the defendant's title by this execution was complete, and prior to that of the plaintiff. It has been decided, by this court, that where an amendment of a writ was allowed by the county court, which was not authorized by the statute, the lien created by the attachment would be dissolved. *Peck* v. *Sill*, 3 *Conn. Rep.* 157. In that case, a creditor had attached the lands of *Hall*, upon a suit against the company of *Hall & Robins.* Another creditor had attached the same lands, on a suit against *Hall* only. The court suffered the first creditor to strike out the name of *Robins* from his writ, and thus leave it as a claim upon *Hall* only. And it was very properly holden, that the cause of action was changed ; that a suit against *Hall* alone, upon a note given by *Hall* alone, was on a different cause of action from a suit upon a note given by *Hall & Robins ;* and that the parties were different. Here, the ground of action is in no respect changed. It remains a suit upon the instrument described in the original declaration, in the name of those who alone are authorized to bring it, for the benefit of all concerned. It is true, that originally, the name of a third person, having only an equitable interest, was introduced. His relation to the cause, was apparent upon the record ; and it was apparent, that whatever interest he might have, he could not, at law, be joined in the suit. As by our statute the plaintiff may amend any defect, mistake or informality, provided it does not change the form or ground of the action, we see no reason why this amendment should not have been allowed. The action remains in form the same. The ground is also the same ; for it is upon the same note. The amendment only strikes out a name

<div style="margin-left:auto">
*Windham,*
*July, 1838.*

Johnson
*v.*
Huntington.
</div>

which was entirely useless. And as the original fully apprised the party of the nature of the demand upon him, in our view, it is one of those informalities or mistakes, which the statute of amendments was intended to aid.

In *Massachusetts*, where two towns had joined in a suit, the court did not hesitate to allow the name of one town to be stricken out, if the other could maintain the suit alone. *Rehoboth* & al. v. *Hunt*, 1 *Pick.* 228. The amendment in this case, therefore, was properly made ; and if so, it cannot dissolve the attachment. The effect of such a construction would be to deprive the law of amendments of half its value, and to return, in a great degree, to that technical nicety in legal process, which this statute was designed to abolish.

Where an amendment is allowed, a third person, whose rights may be affected by it, and who had no opportunity to show this fact, must afterwards have the privilege of being heard ; and if he can show, that the act was not authorized by law, it cannot operate upon him. But if the amendment was such as the law allowed, then it cannot be collaterally attacked, by a third person. As the amendment made in this case, was one which the court were fully justified in allowing, the plaintiff cannot complain of its effects upon him. It did not dissolve the attachment ; and unless the plaintiff will relinquish that part of the verdict, which extends to the land covered by the levy of this execution of the *Whites*, there must be a new trial.

In this opinion the other Judges concurred, except CHURCH, J., who was absent.

<div style="margin-left:auto">New trial to be granted *nisi.*</div>