*New-Haven,*
July, 1839.

English
*v.*
Smith.

ENGLISH and others *against* SMITH and another :

IN ERROR.

The provisions of the statute regarding the disqualifications of judges from relationship or interest, are applicable to commissioners on insolvent estates.

For the purpose of determining the question of jurisdiction, the individual members of a corporation, and not the corporation as such, are to be considered as the party.

Therefore, where one of the commissioners on an insolvent estate was the son, and the other two were tenants, of stockholders of incorporated banks, which banks had claims allowed against the insolvent estate ; it was held, that such commissioners were disqualified to act, and had no jurisdiction of the claims of any of the creditors.

Where a creditor of an insolvent estate neglected to exhibit his claim to commissioners thus disqualified ; it was held, that this did not preclude him, as a party aggrieved, from appealing from the decree of probate accepting the report of such commissioners.

Where a decree of probate appointing commissioners on an insolvent estate, was made in *May*, 1837, and a decree accepting their report was made in *June*, 1838 ; on an appeal from these decrees to the superior court held in *October*, 1838, they were disaffirmed and set aside, on the ground that the commissioners appointed were legally disqualified to act ; it was held, that such decision of the superior court was not erroneous, because the appeal from the former decree was not taken to the next court ; it being the duty of the court, after disaffirming the latter decree, to disaffirm the former also, to give consistency to the entire record.

THIS was an appeal from sundry decrees of the court of probate for *New-Haven* district, made in the settlement of the estate of *Richard Stone*, an insolvent debtor. Those which are the subject of examination in this case, are, 1. the decree of *May* 8th, 1837, appointing *I. H. Townsend, W. P. N. Fitzgerald* and *John Durrie*, to be commissioners on *Stone's* estate. 2. The decree of *January* 9th, 1838, accepting the report of the commissioners. 3. The decree of *June* 19th, 1838, accepting the report of *Fitzgerald* and *Durrie*, two of the commissioners. 4. The decree of the same day, rejecting the application or petition of *Smith & Sherman.*

The first of these was in the usual form, stating due notice to the creditors, describing the commissioners appointed as "judicious and disinterested persons ;" and limiting the term of six months for the exhibition of claims.

By the report of the commissioners, made and accepted on on the 9th of *January*, 1838, the following claims against the

*New-Haven,*
*July, 1839.*

English
*v.*
Smith.

estate of the insolvent, were allowed, *viz.* in favour of the *New-Haven Bank*, $388.15—the *New-Haven County Bank*, 724.12—sundry persons, sums amounting to $9430.95.

The report of *Fitzgerald* and *Durrie* stated, that they had been informed that *Townsend* was interested in the insolvent estate, as a creditor or otherwise, and that the report made by him and them, was, consequently, void : they, therefore, independently of him, allowed the same claims.

The application to the court of probate of *Smith & Sherman*, stated, that they were creditors of the insolvent estate, who had neglected to exhibit their claims to the commissioners, within the time limited for that purpose; that the appointment of each of the commissioners was void, as were all their acts under that appointment : that said *I. H. Townsend* is the son of *Isaac Townsend*, who, at the time of said appointment, was, and ever since has been, a stockholder of the *New-Haven Bank*, and said *I. H. Townsend* was, and is, himself a stockholder of that bank; that said *Fitzgerald* was, at the same time, a tenant of *Titus Street*, who was and is a stockholder of the same bank; and that said *Durrie* was a tenant of *Amos Bradley*, then and still a stockholder of the *New-Haven County Bank.* They, therefore, prayed the court to set aside the reports of the commissioners, and to appoint other judicious and disinterested commissioners, and to limit a reasonable time for the exhibition of claims.

From the above-mentioned decrees of the court of probate, *Smith & Sherman* appealed to the superior court, held at *New-Haven*, in *October*, 1838. The facts stated in their application to the court of probate were found to be true; and thereupon said decrees were disaffirmed and set aside. The appellees, by motion in error, then brought the record before this court for revision.

*R. I. Ingersoll* and *Kimberly*, for the plaintiffs in error, contended, 1. That in respect to the decrees of *May* 8th, 1837, and *January* 9th, 1838, the appeal therefrom was not sustainable; first, because it was not taken to the then next court; secondly, because the appellants were not " persons aggrieved" by either of those decrees; as they did not present their claim to the commissioners, or in any way become *parties* to the proceeding. *Richardson* v. *Richardson,* 2 Root 219.

2. That the superior court erred in reversing the decree of the 19th of *June*, 1838, rejecting the application of the appellants.

*New-Haven, July, 1839.*

English
*v.*
Smith.

In the first place, the two first-mentioned decrees were valid until disaffirmed and set aside. Upon the face of the proceedings, the commissioners had jurisdiction of the parties and the subject matter. 2 *Peters* 163. 10 *Peters* 474.

Secondly, the proceeding by petition was an attempt to evade the statute of limitations;—to get in claims after the expiration of the six months, and to take an appeal after the first session of the superior court had passed. This the court will not sanction.

Thirdly, it did not appear that the commissioners, especially *Fitzgerald* and *Durrie*, were legally disqualified. The disqualification relates to the time of the appointment; but at that time, the banks in question had not presented their claims, and therefore, were not *parties* to the proceedings. But if the banks were parties, it does not follow that the stockholders were. The corporations,—not the members—were the creditors. Mr. *Fitzgerald* was the tenant of *Titus Street*, not of the *New-Haven Bank;* and *Titus Street* had no claim against *Stone's* estate.

*R. S. Baldwin*, contra.

CHURCH J. 1. The foundation of the appellants' objection to the several decrees in question, and the reasons of their appeal therefrom, is, that the persons appointed by the court of probate to be commissioners on said estate, stood in such relation to some of the creditors of said insolvent, as by law to be disqualified to act in that capacity; and that, therefore, the order of the court of probate appointing them, and all subsequent orders founded upon their proceedings, were either erroneous or void.

But the plaintiffs in error object, in the first place, that, as *Smith & Sherman*, the appellants, did not present their claims against said estate to the commissioners appointed, within the time limited by the court, they have no rights as against said estate, and cannot be considered as *aggrieved* persons; and therefore, had no right of appeal. It is obvious that this objection is founded upon a *petitio principii*, and proceeds upon

*New-Haven,*
*July, 1839.*

English
*v.*
Smith.

the ground, that a legal commission had been created, and that the commissioners had a right to receive, consider and allow the claims presented ; which is the very matter in dispute. If the persons appointed commissioners were disqualified to act as such, they had no jurisdiction of the claims ; and no creditor was bound to take notice of their appointment. They constituted no tribunal to which claims could be legally presented ; and creditors forfeited no rights, by neglecting to recognise them. *Smith & Sherman,* therefore, remained entitled to the same privileges of objection and appeal as the other creditors of the insolvent. Besides this, they aver themselves to be creditors in their application to the court of probate ; and that they are so, is a fact found by the superior court. Being creditors of the insolvent, they had an equal interest with all the other creditors in the estate assigned ; and could be aggrieved, by the decrees of the court of probate.

2. It is again claimed, that the decision of the superior court reversing the decree of the court of probate of *May* 8th, 1837, appointing the commissioners, was erroneous, because no appeal was taken from that decree to the then next term of the superior court, although the appellants had legal notice. Waiving the question, whether this objection can be properly made, in this manner, and without other averments and pleadings than appear on this record, we think it cannot prevail, for other reasons. If the persons appointed by this decree to be commissioners, were disqualified, and therefore, the decree appointing them be erroneous, and if, by reason of this, all the subsequent proceedings and decrees have been irregular and erroneous, we can see no propriety in permitting this decree to stand unreversed on the records, which contains within itself the original infirmity, by which all the subsequent irregularities and errors have been occasioned. If this decree is to stand unreversed, it must be because we consider it to be yet operative ; and if it is so, it is very certain it must again produce the same erroneous proceedings, which have been once reversed ; and that no progress can ever be made in the settlement of this estate. The truth is, that the reversal of the subsequent decrees has been predicated entirely upon the principle that this first decree, appointing the commissioners, was erroneous or inoperative, by reason of the fact subsequently discovered, that such commissioners were legally disqualified ; and a re-

versal of the latter decrees involves in it a disregard, if not a virtual reversal of the first; and without such reversal, the record would present an incongruity. It was the duty, therefore, of the superior court, in reversing the decrees of the 9th of *January* and 19th of *June*, 1838, to reverse this decree also, although not appealed from in time, if for no other reason than to give consistency to the entire record, and that it be made conformable to the principles adopted. A proceeding very much like the present, wherein this course was adopted, has been had in the state of *New-York.* By a statute of that state, relative to proceedings in chancery, it was provided, that all appeals from orders of the court of chancery, except those from final decrees, should be made within fifteen days after making the order or decree. In the case of *LeGuen* v. *Governeur & Kemble,* 1 *Johns. Cas.* 498. and in the case of *Jaques* v. *Methodist Episcopal Church,* 17 *Johns. Rep.* 548. on a review before the court for the correction of errors, of a final decree of the chancellor upon appeal, it was claimed, that it was incompetent for the court of errors to look back into the grounds of the several precedent decrees which had been made in the cause, and which had not been appealed from within fifteen days. This claim was not admitted; and *Radcliff,* J. in reference to this subject, in the case first cited, says: " It may frequently become indispensable to reverse, alter or modify the previous proceedings, in order to make them consistent with the decree here to be pronounced."

Besides, if the judge of probate could and ought, by his own act, to have disregarded or rescinded this appointment, upon being properly informed of the facts which rendered it inoperative, it is certain the plaintiffs in error cannot complain that it has been reversed by the superior court. We intimated, in the case of *Sturges* v. *Peck,* 12 *Conn. Rep.* 139., that such a procedure by the court of probate, would have been proper; and we cannot discover any objection to such a course. We do not mean by this to say, that this appointment was void *ab initio;* because as the court of probate had jurisdiction of the subject matter, it had a right to make the decree appointing commissioners; but the decree was necessarily ineffectual, by reason of facts then existing and subsequently discovered. Suppose a court of law should appoint an auditor, or a court of chancery should appoint a committee, and it should be as-

*New-Haven, July, 1839.*

English *v.* Smith.

*New-Haven,*
*July, 1839.*

*English*
*v.*
*Smith.*

certained, that such auditor or committee was dead, absent or otherwise disqualified, when the appointment was made ; would it not be competent for such court, upon proper suggestions, to make a new appointment, without waiting for its order to be reversed, by a superior tribunal ?   In courts where proceedings are had upon motion, nothing is more frequent, than if a judgment has been irregularly obtained, for the same court to set it aside upon motion.   1 *Sellon's Pr.* 345.   *Tidd* 499.   11 *Petersdorf's Abr.* 486.   In *Packman's* case, 6 *Co.* 19. the ordinary had revoked an administration, which had been granted to a stranger, and granted a new administration to the next of kin.   In *Allen* v. *Dundas,* 2 *Term Rep.* 125. probate of a forged will had been obtained in the prerogative court of the archbishop of *Canterbury,* and afterwards the same court revoked that probate, and declared it null and void.   In neither of the cases cited was the original act of the court considered as void *ab initio,* because, as in the present case, it had jurisdiction.   But that courts of probate, for various causes, may revoke or set aside their own acts, especially if done under a mistake of facts, or if procured by misrepresentation or fraud, was conceded in the following cases.   *Semine* v. *Semine,* 2 *Lev.* 90.   *Wooley* v. *Clark,* 5 *Barn. & Ald.* 744.   *Vide* also *Bac. Abr. tit.* Executor D. 12. and the cases there cited. *Toller* 71.   If therefore, it was the duty of the court of probate, upon the application of *Smith & Sherman,* to have revoked the appointment of the commissioners, and to have made a new appointment, the decree of that court rejecting the application, was erroneous, and was properly reversed, by the superior court.

3. This leaves the chief and the original question in this case, unembarrassed for our consideration.   Were either or all of the persons appointed as commissioners so related to the creditors of the estate of the insolvent, as by law to be disqualified to act as such ?

It appears from the report of the commissioners, and it is found true, by the superior court, that the *New-Haven Bank* and the *New-Haven County Bank* were creditors of the insolvent, whose claims were allowed ; and it is also found, that the father of the said *Townsend,* one of the commissioners, was a stockholder in the *New-Haven Bank ;* and that the said *Fitzgerald,* another of said commissioners, was a tenant

of another stockholder of said bank ; and that the said *Durrie,* <span>New-Haven, July, 1839.</span> another commissioner, was a tenant of one of the stockholders of the *New-Haven County Bank.* If the relationship of a judge or commissioner to one of the creditors be as near as that of parent and child, or landlord and tenant, such judge or commissioner is by law disqualified. *Stat.* 111. (ed. 1835.) *Stoddard* v. *Moulthrop,* 9 *Conn. Rep.* 502. *Peck* v. *Sturges,* 11 *Conn. Rep.* 420. 12 *Conn. Rep.* 139. If, therefore, the stockholders of these banks, between whom and these commissioners this relationship existed, are to be considered as the real parties or creditors, rather than the corporations in their corporate capacities, as this is a question of jurisdiction, these commissioners were disqualified to act, and had no jurisdiction of the claims of any of the creditors of this estate. This point we have just decided, during our present term in this county, in the case of *Wood* v. *Hartford Fire Insurance Company,* ante, 202.; and we held, in that case, that for the purpose of determining the question of jurisdiction, the individual members or stockholders of a corporation must be regarded substantially and essentially as the party. This principle we consider as imperative upon us, in the present case ; and the consequence is, that there is nothing erroneous in the judgment of the superior court.

<span style="margin-left:2em">English v. Smith.</span>

In this opinion the other Judges concurred.

Judgment affirmed.