MARY PETROWSKI v. NORWICH FREE ACADEMY ET AL.
(2415)

HULL, DUPONT and BORDEN, Js.

Argued January 10—decision released September 11, 1984

*Marvin M. Horwitz,* with whom, on the brief, were *Deborah H. Benson* and *Gregg C. Benson,* for the appellant (plaintiff).

*Edmund S. Hicks, Jr.,* with whom, on the brief, was *Henry S. Cohn,* for the appellees (defendants).

DUPONT, J. The sole issue of this appeal[1] is whether two lawyers who were members of the board of trustees of a privately endowed high school could, without a denial of due process rights accorded by the fourteenth amendment to the United States constitution,[2] participate in a hearing and a decision on whether to terminate a tenured teacher's contract of employment with the school, when other members of their law firm, both prior to, and as of the date of the hearing, represented the school in other unrelated matters and considered the school a representative client for purposes of legal advertising.

The plaintiff teacher, upon receiving written notice that a termination of her contract was under consideration, requested a hearing before the board of trustees of the high school pursuant to General Statutes (Rev.

---

[1] This appeal, originally filed in the Appellate Session of the Superior Court, was transferred to the Supreme Court, and was thereafter transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).

[2] Article first, § 8 of the Connecticut constitution has the same meaning as the due process clause of the fourteenth amendment to the United States constitution. *Lee* v. *Board of Education,* 181 Conn. 69, 71, 434 A.2d 333 (1980).

to 1983) § 10-151 (b).[3] During the course of that hearing, she sought to have two members of the board disqualify themselves on the ground that they had an interest in the case sufficient to interfere with their impartiality.[4] They refused to disqualify themselves. The board unanimously voted to terminate the plaintiff's employment contract and the plaintiff appealed from that decision to the Superior Court. That court found that neither member of the board was prejudiced against the plaintiff, and that the personal interests of both in the outcome of the proceedings were too nebulous and remote to have required their disqualification. The court rendered judgment for the defendants dismissing the plaintiff's appeal, from which the plaintiff has appealed.

A member of a school board, when participating in an administrative hearing to determine if a tenured teacher's contract should be terminated, is acting in a quasi-judicial capacity. *Catino* v. *Board of Education,* 174 Conn. 414, 417, 389 A.2d 754 (1978). A tenured teacher has a right to continued employment except upon a showing of cause for termination or a bona fide elimination of the teaching position. General Statutes § 10-151 (d). That right is a property right under the due process clause of the fourteenth Amendment to the

---

[3] For purposes of General Statutes (Rev. to 1983) § 10-151 (b) which governs the termination of a tenured teacher's employment contract, the board of trustees of an endowed high school has the same status as a board of education of a public high school. See also General Statutes § 10-34. Section 10-151 (b) was amended by Public Acts 1983, No. 83-398, § 1, but the amendment is immaterial to this decision; § 10-151 (b) is now § 10-151 (d), and is hereinafter referred to as § 10-151 (d) in the text of this opinion.

[4] Pursuant to General Statutes (Rev. to 1983) § 10-151 (b) (6), as it existed at the time of trial, the plaintiff or the board could have, in the alternative, requested or designated an impartial hearing panel to decide whether the plaintiff's contract should be terminated. At the time the plaintiff requested that the matter be heard by the trustees, she was unaware of the fact that other members of the law firm of two of the trustees represented the school in connection with other matters.

United States constitution and Article first, § 8 of the Connecticut constitution. *Board of Regents* v. *Roth,* 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972); *Lee* v. *Board of Education,* 181 Conn. 69, 72, 434 A.2d 333 (1980). As such, courts must ensure, upon review of a decision to terminate employment, that the right to employment is meaningfully protected. Id., 83. That protection includes a fair hearing by an impartial hearing panel. *Catino* v. *Board of Education,* supra, 418.

Since a tenured teacher has a constitutionally protected property interest in his or her employment, the question, in the context of this case, becomes what constitutes an impartial hearing panel sufficient to satisfy constitutional due process. Due process requires a fair hearing before a fair tribunal which principle applies with equal vigor to administrative adjudicatory proceedings. *Gibson* v. *Berryhill,* 411 U.S. 564, 579, 93 S. Ct. 1689, 36 L. Ed. 2d 488 (1973).

In order to determine if the board in this case was constitutionally impartial, it is first necessary to determine what guidelines for disqualification prevail in an administrative hearing relating to a termination of a tenured teacher's employment contract. Differing standards for disqualfication apply to different administrative hearings. Allen, "Disqualifying Agency Decision Makers," Litigation, Winter 1981, p.15. Administrative hearings may be categorized as quasi-judicial, legislative, prosecutorial, or rulemaking.[5]

---

[5] It is not violative of due process for the same authority which initiated the subject of the hearing to listen to and determine its outcome as long as that authority gives the person appearing before it a fair, open and impartial hearing. 2 Am. Jur. 2d, Administrative Law § 412. An administrative agency can be the complainant and the adjudicator without being an unfair tribunal if it keeps the functions separate. *Withrow* v. *Larkin,* 421 U.S. 35, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975); *Bruteyn* v. *State Dental Council & Exam. Bd.,* 32 Pa. Commw. 541, 380 A.2d 497 (1977). The standard which governs disqualification when determinations are made in a legislative capacity are far less stringent, requiring interference by the courts

The parties in the present case rely almost entirely, in their briefs, on Connecticut cases relating to the disqualification of members of zoning commissions, zoning boards, and planning commissions. Such cases provide helpful guidelines for the necessity of disqualification in some administrative hearings. The disqualification of members of such boards and commissions has been governed by specific statutes since the leading case of *Low* v. *Madison,* 135 Conn. 1, 60 A.2d 774 (1948). After that case held that public officers, such as members of zoning commissions, cannot sit as members when their private interests could conflict with their duty to be fair and impartial, the legislature enacted General Statutes §§ 8-11 and 8-21. These statutes prohibit members of such boards and commissions from representing those with matters before the boards and commissions, and from serving on such bodies when the members are directly or indirectly interested in those matters in a personal or financial sense. Cases decided pursuant to these statutes are illustrative of the basic premise that "no man shall be a judge in his own case" and serve as a statutory guide in cases involving such boards and commissions as well as in cases not involving them. *Dana-Robin Corporation* v. *Common Council,* 166 Conn. 207, 213–14, 348 A.2d 560 (1974); *Furtney* v. *Zoning Commission,* 159 Conn. 585, 592, 271 A.2d 319 (1970); *Anderson* v. *Zoning Commission,* 157 Conn. 285, 290, 253 A.2d 16 (1968); *Kovalik* v. *Planning & Zoning Commission,* 155 Conn. 497, 498–99, 234 A.2d 838 (1967); *Josephson* v. *Planning Board,* 151 Conn. 489, 493, 199 A.2d 690 (1964). The holdings of such cases support the general propositions that the requirement of disqualification depends upon the facts of the particular case and that public officials

only when there has been fraud, corruption, plain disregard of duty, a gross abuse of power or a violation of the law in the action taken. *LaTorre* v. *Hartford,* 167 Conn. 1, 9, 355 A.2d 101 (1974); see *Groton* v. *Hurlburt,* 22 Conn. 178 (1852).

cannot have a personal interest in the subject matter or a relationship with one of the parties which would destroy their impartiality or conflict with their duty.

A recent case, which does not discuss disqualification of a public official in terms of due process and which does not involve the application of General Statutes §§ 8-11 and 8-21, does affirm the principles of *Low* v. *Madison,* supra. In *Gaynor-Stafford Industries, Inc.* v. *Water Pollution Control Authority,* 192 Conn. 638, 474 A.2d 752 (1984), it was determined on the particular facts of that case that a member of the water authority did not have a personal interest sufficient to conflict with his public duty to determine benefit assessments for industrial users of a public sewerage system. The member was an officer of one of the industrial users. Although he participated in the vote adopting the method of benefit assessments, that method was not devised by the authority but was recommended by a consultant hired by the water authority, and the idustrial user of which he was an officer did not benefit from either the method of calculation or the date chosen for determining the assessment. The court quoted from *Low* v. *Madison,* supra, 8, noting that the actual good faith of a public officer is immaterial since it is the policy of the law to insure that such official exercises his public duty unselfishly, without any conflict because of a personal interest in the matter. "The test is not whether personal interest does, in fact, conflict, but whether it might reasonably conflict." *Gaynor-Stafford Industries, Inc.* v. *Water Pollution Control Authority,* supra, 648. "[T]he appearance of impropriety created by a public official's participation in a matter in which he has a pecuniary or personal interest is alone sufficient to require disqualification." Id., 649. It is particularly important to note that *Gaynor-Stafford* did not involve a public body acting in a quasi-judicial capacity, but,

rather, one in a legislative or rulemaking capacity since the procedure or formula used by the authority applied equally to all those to be assessed.

Federal case authority is consonant with Connecticut cases. A line of federal cases, beginning in 1926, discuss general principles relating to the due process requirements of administrative hearings. All agree that due process is violated when there has been an impermissible risk of bias, or a lack of entitlement to an impartial and disinterested tribunal. *Schweiker* v. *McClure,* 456 U.S. 188, 102 S. Ct. 1665, 72 L. Ed. 2d 1 (1982); *Marshall* v. *Jerrico, Inc.,* 446 U.S. 238, 100 S. Ct. 1610, 64 L. Ed. 2d 182 (1980); *Withrow* v. *Larkin,* 421 U.S. 35, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975); *Ward* v. *Village of Monroeville,* 409 U.S. 57, 93 S. Ct. 80, 34 L. Ed. 2d 267 (1972); *In re Murchison,* 349 U.S. 133, 75 S. Ct. 623, 99 L. Ed. 942 (1955); *Tumey* v. *Ohio,* 273 U.S. 510, 532, 47 S. Ct. 437, 71 L. Ed. 749 (1927); *Wolkenstein* v. *Reville,* 694 F.2d 35 (2d Cir. 1982), cert. denied, 462 U.S. 1105, 103 S. Ct. 2452, 77 L. Ed. 2d 1332 (1983); *Amos Treat & Co.* v. *Securities & Exchange Commission,* 306 F.2d 260 (D.C. Cir. 1962). None relies upon a particular statute governing disqualification. The results vary with the facts. Due process is an elusive concept which lacks definable boundaries.

During the period 1969 to 1979, "the Supreme Court has proceeded case-by-case in determining whether due process applies to various functions of administrative agencies, and in determining the specific process required." Note, "Due Process and Ex Parte Contacts in Informal Rulemaking," 89 Yale L.J. 194, 200 (1979).

The case of *Simard* v. *Board of Education,* 473 F.2d 988 (2d Cir. 1973), is relied on by both parties. The plaintiff cites it because of its reaffirmation of the principle that an impartial decision maker is a basic

component of minimal due process and that an administrative hearing must contain every element of fairness, both in reality and appearance. The defendant cites it for the proposition that, absent a showing of actual, rather than potential bias, members of a school board need not disqualify themselves because of their prior contacts with a party. The *Simard* case is inapposite to the present case. It is confined to its particular facts, involves a nontenured teacher, and sought, as relief, a blanket disqualification of the entire board as a hearing body. The court was influenced in its decision by the fact that if the board of education could not hear and decide whether the nontenured teacher's contract should be terminated, the hearing would, of necessity, have to be held by a body less familiar with the making of such a decision. General Statutes § 10-151 (d), as it existed at the time of the *Simard* decision, was amended in pertinent part by Public Acts 1975, No. 75-615 and Public Acts 1983, No. 83-398, § 1 since that decision. The statute now provides for a hearing before an impartial tribunal as an alternative to a hearing before the board.[6] Thus, the buttress for the *Simard* court's holding has been seriously weakened.

Although cases involving disqualification of members of zoning and planning boards and commissions have been relied upon by the parties for their respective positions, it is equally helpful to examine those statutes, rules and decisions which relate to the disqualification of judges, since boards of education, acting pursuant to General Statutes § 10-151 (d), act in a quasi-judicial capacity. *Catino* v. *Board of Education,* 174 Conn. 414, 417, 389 A.2d 754 (1978). The acme of impartiality required of administrative hearing bodies exists when those bodies act in a quasi-judicial capacity. See Allen, supra.

---

[6] See footnotes 3 and 4, supra.

"The same considerations which have led to the development of rules as to the disqualification of judicial officers for bias or prejudice, based on personal interest or the like, have been generally recognized as applicable to administrative officials as well, insofar as they act in a judicial or quasi-judicial capacity." Annot., 10 A.L.R.3d 694, 696; 1 Am. Jur. 2d, Administrative Law §§ 63 through 69; see also *Gibson* v. *Berryhill*, 411 U.S. 564, 579, 93 S. Ct. 1689, 36 L. Ed. 2d 488 (1973). The *Gibson* court stated: "It has also come to the prevailing view that '[m]ost of the law concerning disqualification because of interest applies with equal force to . . . administrative adjudicators.' " *Gibson* v. *Berryhill*, supra, quoting Davis, Administrative Law (1972) § 12.04, p. 250.

The rules which apply to administrators, however, are not always the same as those which apply to judges because administrators often perform functions which are foreign to judges. Any determination of whether there is impropriety or the appearance of impropriety on the part of a member of an administrative board is linked to the subsidiary determination of whether the board is acting in a legislative, prosecutorial or judicial role. "When an administrator acts as a judge, not a prosecutor or legislator, he must conduct himself like a judge. That means impartiality; the standard for judges set forth in 28 U.S.C. § 455 will generally apply.[7] An agency judge must not participate 'in any proceeding in which his impartiality might reasonably be questioned.' " (Footnote added.) Allen, supra, 16.

The constraints which ought to be imposed on administrators may be examined by making an analogy between the disqualification rules which apply to judges and those which, by derivation, should apply to those administrators who act as judges. Strauss, "Disqualifications of Decisional Officials in Rulemaking,"

---

[7] See page 561, infra.

80 Colum. L. Rev. 990, 997 (1980). A judge usually determines issues in a case-unique proceeding, with an on-the-record adjudication of those issues, with the power to resolve issues involving specific parties and the power to impose sanctions and penalties against, or to grant awards to particular individuals. The test for judicial disqualification parallels the test for administrative adjudicative disqualification. Id., 1020–22. The due process requirements of an impartial hearing body in the quasi-judicial realm is equivalent to that requirement in the judicial realm. *Withrow* v. *Larkin*, 421 U.S. 35, 46–51, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975). When administrators act in a quasi-judicial capacity, as the board in this case did, their functions and that of judges most closely merge and the judicial model to test impropriety becomes an acceptable one. Strauss, supra, 1026–27.

Connecticut has had a statute since 1672 requiring the disqualification of a judge in cases in which certain familial relationships exist between a judge and a litigant. General Statutes of 1672, p. 42. That statute is the progenitor of our present statute which prohibits a judge from hearing cases in which he has an interest or in which he and a litigant have a particular relationship.[8] The purpose of the statute is to ensure that those

---

[8] General Statutes § 51-39 (a) provides in pertinent part that "a judge is disqualified to act if a relationship between the judge and a party in any proceeding in court before him is as near as the degree of kinship between father and son, brothers, or uncle and nephew, by nature or marriage, or as near as between landlord and tenant . . . or if he may receive a direct pecuniary benefit by the determination of any proceeding before him." Although phrased differently, the standards of this statute, relating to the disqualification of a judge are remarkably similar in effect to General Statutes §§ 8-11 and 8-21. The former is less stringent in one respect, prohibiting a direct pecuniary benefit as opposed to the indirect pecuniary benefit prohibited in the latter statutes. The judicial disqualification statute is more stringent in that certain relationships are per se disabling whereas the administrative statutes arguably contemplate a case-by-case finding of a direct or indirect personal stake in the outcome.

who participate in proceedings in a judicial capacity are disinterested in the proceedings. *Dacey* v. *Connecticut Bar Assn.*, 184 Conn. 21, 27, 441 A.2d 49 (1981). The relationships listed in General Statutes § 51-39 (a) are illustrative and not all-inclusive, and extend to the relationship between a judge and a nonstock corporation in which the judge holds membership. *Dacey* v. *Connecticut Bar Assn.*, supra, 28–29. Such a relationship without any finding of actual bias or prejudice, and without any finding of the lack or presence of a financial interest in the outcome of the litigation is sufficient per se to disqualify a judge from listening to a case in which the nonstock corporation is a litigant.

It is not only judges to whom the present statute or prior statutes apply. Those acting in a judicial capacity, in the sense that they preside over the receipt and examination of evidence and the taking of evidence from sworn witnesses, with a duty to make orders based on the evidence presented, are subject to the statutory prohibition. *French* v. *Waterbury,* 72 Conn. 435, 44 A. 740 (1899); *Windham Cotton Mfg. Co.* v. *Hartford, Providence & Fishkill R. Co.,* 23 Conn. 373, 385 (1854); *English* v. *Smith,* 13 Conn. 221 (1839); *Johnson* v. *Huntington,* 13 Conn. 47 (1838); *Stoddard* v. *Moulthrop,* 9 Conn. 502 (1833); *Fox* v. *Hills,* 1 Conn. 295 (1815).

In determining the issue of the present case, it is assistive to examine the federal statutes which govern judicial conduct. There is a federal counterpart to the Connecticut statute. A judge must disqualify himself in any proceeding in which his impartiality might reasonably be questioned. 28 U.S.C. § 455 (a). Although the statute does not strictly apply to the disqualification of administrators, it is a persuasive indicator of the principles to be applied in order to determine in what instances administrators must disqualify themselves. 3 Davis, Administrative Law Treatise (2d Ed.

1980) § 19.6; see comment, "Disqualification of Federal Judges for Bias or Prejudice," 46 U. Chi. L. Rev. 236 (1978).

In order to resolve whether disqualification is necessary, the issue is not whether the judge is impartial in fact but whether the average person would question his impartiality. *United States* v. *Gigax,* 605 F.2d 507, 511 (10th Cir. 1979). The statute does not apply per se to the disqualification of those other than judges but is a compelling guide for the disqualification of hearing officers who act in adjudicatory administrative capacities. 3 Davis, supra, § 19.6.

Canon 3 of the code of judicial conduct in Connecticut is very similar to 28 U.S.C. § 455 (a) and also requires disqualification of a judge in a proceeding in which his impartiality might reasonably be questioned. The canons of judicial ethics may apply to those other than full-time judges. *Clark* v. *DeFino,* 80 N.J. 539, 545–46, 404 A.2d 621 (1979); *Matter of McInnis,* 273 S.C. 589, 592, 258 S.E.2d 91 (1979); *West Virginia Judicial Inquiry Commission* v. *Casto,* 163 W. Va. 661, 662 n.2, 263 S.E.2d 79 (1979).

Hornbook law is relatively easy to state. The difficulty lies in applying it to a particular case. The question here is whether two of the members of the hearing panel, as members of a law firm which had represented and which currently represented one of the litigants, the school, in other unrelated matters and which listed the school as a representative client in legal advertising, must be disqualified even though they had no personal bias or prejudice, or knowledge of the particular case to be heard. All of the trustees were acquainted with the school and had been appointed by the school. Two of them, however, had a connection with the school, apart from their membership on the board of trustees, which might interfere with their impartial-

ity. Those who act in a quasi-judicial capacity as when deciding whether to terminate a tenured teacher's contract; *Catino* v. *Board of Education,* supra; must disqualify themselves when their interests or relationships create the appearance of possible partiality. *LaTorre* v. *Hartford,* 167 Conn. 1, 8, 355 A.2d 101 (1974). An attorney-client relationship between a judge and a party in a proceeding before the judge disqualifies the judge.[9] *Dacey* v. *Connecticut Bar Assn.,* supra, 27.

When the school retained the law firm of two of the members of the school's board of trustees, it retained every member of the firm, and the attorney-client relationship which resulted included those members. *Bossert Corporation* v. *Norwalk,* 157 Conn. 279, 283, 253 A.2d 39 (1968). They represented the school as surely as if they personally had been consulted as attorneys for the school. The law firm has an attorney-client relationship with the school, even though in some instances it was paid or will be paid by an insurer of the school. The test of the attorney-client relationship is not who pays the bills, but to whom allegiance is owed. *Novella* v. *Hartford Accident & Indemnity Co.,* 163 Conn. 552, 573, 316 A.2d 394 (1972); Connecticut Bar Association, Informal Opinion No. 83-5, October 14, 1982.

The present case is the once-removed kin of *Bossert Corporation* v. *Norwalk,* supra. In *Bossert,* a decision of the hearing body was declared invalid under General Statutes § 8-21 because a member of that body was also a member of a law firm which represented an opponent of the applicant, even though the member disqualified himself and did not participate in the hearing. Here, members of the hearing body were also members of a law firm which represented a litigant on other matters.

[9] There is even a technical basis for the disqualification of a juror if he is a recipient of a pension from a corporation owning stock in a corporate party to the litigation which the juror must decide. *McCarten* v. *Connecticut Co.,* 103 Conn. 537, 131 A. 505 (1925).

The purpose of General Statutes §§ 51-39, 8-11 and 8-21, and of decisions on the subject of disqualification is to guarantee the impartiality of tribunals. These statutes and decided cases are indicative of a legislative and judicial policy that judges and those acting in certain administrative roles must not preside over or hear cases or matters in which they are not wholly free, disinterested and independent. Due process for those with protected property rights requires an impartial administrative adjudicator. *Gibson* v. *Berryhill,* supra, 579.

"[J]ustice must satisfy the appearance of justice." *Offut* v. *United States,* 348 U.S. 11, 14, 75 S. Ct. 11, 99 L. Ed. 11 (1954). This "stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties." *In re Murchison,* 349 U.S. 133, 136, 75 S. Ct. 623, 99 L. Ed. 942 (1955).

Two members of the board of trustees of the school had a double-layered fealty to it. Their simultaneous relationship with the school and with their law firm is too close for procedural due process comfort. Their participation in the hearing was violative of the plaintiff's due process rights.

There is error, the judgment is set aside and the case is remanded with direction to reverse the decision of the board of the trustees.

In this opinion HULL, J., concurred.

BORDEN, J., dissenting. The majority applies to the defendants a standard which the constitution does not demand of them, and it reaches a result which is inconsistent with the application of the proper standard. Therefore, I dissent.

The plaintiff, a female teacher at Norwich Free Academy, after a full administrative hearing before the eight members of the board of trustees of the academy, was found, inter alia, to have had intimate physical contact with one of the minor students of the academy; to have provided alcoholic beverages to several such minor students, including the one with whom she had intimate contact; to have consumed alcoholic beverages with them; to have permitted them to consume such beverages in her presence; and to have taken a student, who was inexcusably absent from class, to an athletic event and later to have covered for him by writing a note. On the basis of these findings, which she does not challenge on this appeal, the board of trustees terminated her contract of employment.

On appeal to the Superior Court, the plaintiff challenged the participation in the administrative proceeding of two of the members of the board on the ground that they were also members of the law firm that represented the academy in other, unrelated matters. One of the challenged members, Wayne G. Tillinghast, when requested by the plaintiff to disqualify himself from the administrative proceedings, had made remarks on the record which were subject to an interpretation calling into question his impartiality; the other challenged member, James J. Dutton, made no such remarks. The trial court heard evidence and specifically found that the law firm of which Tillinghast and Dutton were members represented the academy from time to time on relatively minor real estate matters; that the firm considered the academy as a representative client for purposes of advertising and legal publication; that at the time of the administrative hearing one of the other members of the firm was retained by the academy's insurer to represent it in a tort suit; that Tillinghast was not prejudiced against the plaintiff and had not prejudged the case; and that there was no evidence that

Dutton was prejudiced against the plaintiff or unfair to her in any way. The plaintiff does not challenge these critical findings on this appeal.

Her sole claim before us is that the participation of Tillinghast and Dutton in the administrative hearing violated her due process rights under the fourteenth amendment to the United States constitution. I can only read the majority opinion as resting on the proposition that the due process test for disqualification of an administrative adjudicator is equivalent to the test for disqualification of a judge. That this is the gist of the opinion is clear from the following sentence, which ends the critical paragraph of the majority opinion: "When administrators act in a quasi-judicial capacity, as the board in this case did, their functions and that of judges most closely merge and the judicial model to test impropriety becomes an acceptable one." *Petrowski* v. *Norwich Free Academy,* supra, 560.

I agree that had Tillinghast and Dutton been judges participating in a judicial proceeding, they would have been disqualified, because the relationship between their law firm and the academy would have violated the governing standard for judicial disqualification, which is the reasonable appearance of impropriety. " 'The question is not whether the judge is impartial in fact. It is simply whether another, not knowing whether or not the judge is actually impartial, might reasonably question his [or her] impartiality, on the basis of all of the circumstances.' " *Papa* v. *New Haven Federation of Teachers,* 186 Conn. 725, 746, 444 A.2d 196 (1982).

The majority, however, draws an equation between the standard governing judicial disqualification and the due process standards governing disqualification of administrative adjudicators. The principal authorities offered for this startling proposition are several pas-

sages from a law review article; Strauss, "Disqualifications of Decisional Officials in Rulemaking," 80 Colum. L. Rev. 990 (1980); and from a passage from *Withrow* v. *Larkin,* 421 U.S. 35, 46–51, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975). I can find no support in any of those passages for the majority's thesis of equality. In fact, the most telling part of one of those passages, rather than supporting the equation, contradicts it: "Yet the Supreme Court does not appear to have concluded that only those official functions *that would also be performed by a judge consistent with judicial duty* are consistent with fairness in adjudicative activities." Strauss, supra, 1021–22. (Emphasis in original.) And the only references in *Withrow* v. *Larkin,* supra, are to the proposition that conduct by an administrator which would not require disqualification if he were a judge is, a fortiori, not constitutionally impermissible for the administrator. This is a far cry from the proposition of the majority, namely, that the standard for impartiality for a judge is what must be applied, as a matter of due process of law, to the issue of disqualification of an administrative adjudicator.

The proposition of the majority is contrary to the law. "The fact that [an administrative hearing officer] might have been disqualified as a judge . . . does not, either in principle or under the authorities, infect the hearing with a lack of due process." *Lopez* v. *Henry Phipps Plaza South, Inc.,* 498 F.2d 937, 944 (2d Cir. 1974); see also comment, "Disqualification of Federal Judges for Bias or Prejudice," 46 U. Chi. L. Rev. 236, 237 n.6 (1978) ("the subject of judicial disqualification in the federal courts is governed by statutes that establish a more stringent standard than the Constitution demands"), citing *United States* v. *Haldeman,* 559 F.2d 31, 130 n.276 (D.C. Cir.), cert. denied, 431 U.S. 933, 97 S. Ct. 2641, 53 L. Ed. 2d 250, reh. denied, 433 U.S.

916, 97 S. Ct. 2992, 53 L. Ed. 2d 1103 (1977)[1]; *Schweiker* v. *McClure,* 456 U.S. 188, 197 n.11, 102 S. Ct. 1665, 72 L. Ed. 2d 1 (1982) ("The District Court's analogy to judicial canons . . . is not apt. The fact that a hearing officer is or was a carrier employee does not create a risk of partiality analagous to that possibly arising from the professional relationship between a judge and a former partner or associate.") Thus, much of the majority opinion is simply beside the point.

The proper standard by which a due process claim of administrative disqualification is to be judged is stated in one of the United States Supreme Court cases which the majority opinion cites but does not discuss. *"Mathews* v. *Eldridge,* 424 U.S. 319, 335 [96 S. Ct. 893, 47 L. Ed. 2d 18] (1976), makes three factors relevant to such an inquiry: 'First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.' " *Schweiker* v. *McClure,* supra, 193–94; *Santosky* v. *Kramer,* 455 U.S. 745, 751, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); see also *McGaffin* v. *Roberts,* 193 Conn. 393, 412–13, 479 A.2d 176 (1984) (*Parskey, J.,* dissenting) (quoting the three-part test articulated by *Mathews* v. *Eldridge,* supra, and *Schweiker* v. *McClure,* supra). Applying this test to the facts of this case, I conclude that the plaintiff's due process rights were not violated.

The plaintiff's private interest in her continued employment as a teacher is, of course, weighty and is

---

[1] I note that although the majority opinion cites this law review article with approval; see p. 562, supra; it does not refer to this part of it, which is contrary to the opinion's central thesis.

entitled to due process protection. *Lee* v. *Board of Education,* 181 Conn. 69, 72, 434 A.2d 333 (1980). The risk of an erroneous deprivation of that interest through the procedure used, namely, the participation of Tillinghast and Dutton, and the probable value of additional and substitute procedural safeguards, did not require, however, the disqualification of either Tillinghast or Dutton in this case.

The trial court, after a full evidentiary hearing, specifically rejected the plaintiff's factual claim that Tillinghast and Dutton might be fearful of losing the academy as a client by not sustaining the charges against the plaintiff. The court also specifically found that Tillinghast was not prejudiced against the plaintiff, and had not prejudged the case, and that there was no evidence that Dutton was prejudiced against the defendant or unfair to her. It is axiomatic that "the burden of establishing a disqualifying interest rests on the party making the assertion." *Schweiker* v. *McClure,* supra, 196. Thus, the plaintiff did not carry any factual burden of showing actual harm to her by the participation of Tillinghast and Dutton.

Moreover, it is very significant that the plaintiff chose to have her case adjudicated by the academy's trustees, rather than, as was also her option, by a three person "impartial hearing panel" chosen as follows: one person chosen by the plaintiff, one chosen by the board, and one chosen by the two selected by her and by the board. General Statutes (Rev. to 1983) § 10-151 (b). Thus, she chose as her panel a group of people who already had a fiduciary duty, as members of the board of trustees, to the academy. The procedure established by General Statutes (Rev. to 1983) § 10-151 (b) rests on the "presumption that hearing officers who decide [such] claims are unbaised"; *Schweiker* v. *McClure,* supra, 195; a presumption that, unless rebutted, underlies the entire process of administrative adjudication.

Id.; *Withrow* v. *Larkin,* 421 U.S. 35, 47, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975). This statutory scheme and, indeed, the law of administrative adjudication which generally permits combining in one agency or even one individual both investigative and adjudicative responsibilities; see *Withrow* v. *Larkin,* supra; assume that the adjudicators will, when faced with the specific and weighty task of adjudicating a particular claim of teacher misconduct, put aside their general loyalty to the academy and act conscientiously. The trial court found in effect that these two challenged adjudicators could and did so conduct themselves. I cannot believe, therefore, that, simply because these two of the eight trustees who heard the case are also members of a law firm which represents the academy on other, unrelated matters, there was added a constitutionally impermissible degree of error, or that the value of the additional safeguard of disqualification was constitutionally required.

Finally, the state has a strong interest in the control of its public educational system; *Goss* v. *Lopez,* 419 U.S. 565, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975); see *Campbell* v. *Board of Education,* 193 Conn. 93, 475 A.2d 289 (1984); and thus in ensuring that young men and women be taught by teachers whom they can respect and who can serve as proper role models. When a teacher's conduct is called into serious question, as it was here, the function of deciding whether that teacher should remain in her role is as important to the state as it is to her. The "fiscal and administrative burdens that [disqualification of Tillinghast and Dutton] would entail"; *Schweiker* v. *McClure,* supra, 194; are that this important decision would have had to be made by less than a full complement of the board, an option that should be reserved for cases involving a showing of actual bias on the part of a member of the board.[2]

---

[2] The plaintiff does not suggest that Tillinghast and Dutton should have been replaced by substitutes, only that they should have disqualified them-

The result I reach is consistent with the distinct thrust of the authoritative federal cases applying the three-part due process test to analogous claims. In *Schweiker* v. *McClure,* supra, the Supreme Court found no due process violation where Medicare claims were adjudicated, even without a right of appeal, by hearing officers employed by the private insurance carriers which administered the claims. In *Withrow* v. *Larkin,* supra, the Court found no due process violation where a physician's right to practice medicine was both investigated and adjudicated by the very same administrative licensing board. In *Lopez* v. *Henry Phipps Plaza South, Inc.,* supra, the court found no due process violation where an eviction case was heard by a hearing officer who was also the manager of another housing project, which was also owned by the corporate parent of the landlord in the case which he was adjudicating. In *Wolkenstein* v. *Reville,* 694 F.2d 35 (2d Cir. 1982), the court found no due process violation where the superintendent of schools, of a school district in which the teachers went on an illegal strike, both dismissed teachers for striking illegally and adjudicated their subsequent objections to those dismissals. And in *Simard* v. *Board of Education,* 473 F.2d 988 (2d Cir. 1973), which the majority in this case attempts to distinguish, the court found no due process violation where the local board of education denied the plaintiff tenure after the board had recently bargained with the plaintiff who was chief negotiator for the teachers in contract negotiations "characterized by particular bitterness and recrimination." Id., 990. Contrary to the majority's limited reading of the case, it has been cited by Professor Davis as resting on the "absence of

---

selves from the hearing. Indeed, such a substitution would be anomalous since the substitutes would neither be members of the board nor members of an impartial hearing panel selected in the statutory manner.

'actual, rather than potential, bias.' " 3 Davis, Administrative Law Treatise (2d Ed. 1980) § 19.4, pp. 388–89.[3]

It is clear to me that in most or all of these cases a judge would have been properly disqualified from hearing the matter because of the appearance, rather than the actuality, of partiality. *Papa* v. *New Haven Federation of Teachers,* supra. This properly broad standard, deemed essential to public confidence in the integrity of the judiciary, does not apply to the administrative realm as a matter of due process of law. The majority opinion's equation, for disqualification purposes, between administrative adjudicators and judges ignores the factual findings of the trial court; ignores the applicable precedents; ignores a long history of administrative law; ignores a long-standing presumption that administrative hearing officers, even those who may *appear* partial, are unbiased unless shown to the contrary; and, in my view, imperils other administrative adjudicative proceedings which, for example, combine in one agency or administrator both investigative and adjudicative responsibility. See, e.g., General Statutes §§ 19a-494 and 19a-498 (inspection of health facilities and adjudication of license revocations); cf. *Withrow* v. *Larkin,* supra.

My final disagreement with the majority lies in the rescript to the opinion, which orders that the case be remanded with direction to reverse the decision of the board. It does not address the question of whether either the board, shorn of Tillinghast and Dutton, or a statutory impartial hearing panel selected under General Statutes (Rev. to 1983) § 10-151 (b) can properly

[3] Another case cited with approval by the majority; *Amos Treat & Co.* v. *Securities & Exchange Commission,* 306 F.2d 260 (D.C. Cir. 1962); has been characterized by Professor Davis as an "extreme case" which "probably is no longer law," and Davis points out that *"Withrow* v. *Larkin,* 421 U.S. 35 [95 S. Ct. 1456, 43 L. Ed. 2d 712] (1975) probably cannot be reconciled with *Amos Treat."* 3 Davis, Administrative Law (2d Ed. 1980) § 19.4, p. 389.

rehear the case. Although I would find no error in the decision of the trial court, if error is found, certainly the academy should be entitled to a rehearing of its charges before a tribunal which does not contain what the majority deems to be a constitutional taint. When such strongly competing interests are at stake, the ultimate outcome should not hinge on a procedural defect which is readily curable.