OSTRANDER *v.* CAPITOL INVESTMENT, BUILDING & LOAN ASS'N.

1. ATTORNEYS IN PARTNERSHIP—RETAINER OF ONE MEMBER.
   A retainer of one member of a firm of attorneys is a retainer of the firm, in the absence of an agreement to the contrary.

2. SAME—CONTRACT FOR INDIVIDUAL SERVICES.
   A contract for the services of one member of a firm of attorneys individually is legal, and such member can sue alone upon it; and, although the other members may assist him, they cannot recover for services so rendered, unless there is an express agreement to do so.

3. SAME—FORMATION OF PARTNERSHIP AFTER RETAINER.
   An attorney who contracts with a party to perform certain legal services at an annual salary, and who, before the end of the year, enters into a partnership with another attorney, may sue in his own name to recover the salary, though his partner may have assisted in performing the services.

4. SAME—YEARLY SERVICE—DISCHARGE—INSTRUCTIONS.

The court charged the jury that if they should find that plaintiff was personally retained for annual periods at a stated salary, and entered upon and performed his duties for over two months of the last year, and was then discharged, and defendant continued to use his name as general counsel upon its letterheads, and publish him to the world as such, for the remainder of the year, then plaintiff could recover his salary for that year. *Held*, that the reference to the continued use of plaintiff's name on the letterheads was not prejudicial error, as the jury could not have been misled by the fact that defendant used the letterheads it had on hand without erasing the plaintiff's name.

Error to Ingham; Wiest, J. Submitted February 19, 1902. (Docket No. 62.) Decided April 8, 1902.

*Assumpsit* by Russell C. Ostrander against the Capitol Investment, Building & Loan Association on a contract of employment. From a judgment for plaintiff, defendant brings error. Affirmed.

For some time prior to April 5, 1890, plaintiff and Mr. Edward Cahill formed the law partnership of Cahill & Ostrander, with offices at Lansing. At that date Mr. Cahill was appointed a Justice of the Supreme Court, which appointment and acceptance terminated *ipso facto* the partnership, and it was formally dissolved on April 8th. Plaintiff continued the business thereafter in his own name and on his account until the 1st day of January, 1891, when Mr. Cahill retired from the bench, and he and plaintiff again entered into partnership in the practice of the law. They continued in partnership until July 15, 1898, when they dissolved. On March 11, 1890, the defendant was organized, with offices in Lansing, officers chosen, and Mr. Cahill appointed its general counsel. Plaintiff was not informed, and had no knowledge, of this appointment. Mr. Cahill had made no arrangements for compensation, and there was at that time little, if anything, to do. Mr. Cahill performed no services for which

he made any charge. There was, therefore, no occasion to inform Mr. Ostrander of Mr. Cahill's appointment. Soon after his appointment as justice of this court, Mr. Cahill formally presented his resignation to the defendant, and it was accepted.

About June 1, 1890, plaintiff, after talking with the officers of the defendant, and inquiring into its business, made an agreement to perform all legal services for it for one year from June 1, 1890, for $250 and disbursements, and expenses for travel outside of the city of Lansing. He performed those services, and was paid. In 1891, 1892, and 1893 plaintiff asked for increases in salary, which were granted. In 1895 he asked for another increase, but this was refused. Defendant's records showed by appropriate resolution the appointment of plaintiff as its general counsel. In its sworn statements, filed with the secretary of State, it gave his name as such. Upon its letterheads and other documents it printed his name as such from 1890 up to the time of his discharge by it, on August 18, 1898. All written communications made by it to him, and by him to it, were in the name of plaintiff as its general counsel and attorney. He did the most of its legal business. In his absence or sickness Mr. Cahill acted in his stead in giving advice and doing whatever was required. He gave some opinions, signing them, however, in the name of the plaintiff in all instances except one, which he signed in the firm name. When suits were brought they were brought in the name of the firm. By agreement between plaintiff and Mr. Cahill all income from the business was divided equally between them. Mr. Ostrander was at one time city attorney, and his salary was divided. In 1891 Mr. Cahill was elected a director of defendant, continued as such until after plaintiff's discharge, and received a salary as such. Plaintiff knew nothing of the resolutions passed by the directors in regard to his appointment. He dealt with the officers of the company, who had the undoubted authority to employ counsel. That such counsel was necessary is admitted.

On June 30, 1891, the association voted to retain plaintiff as counsel for the year beginning June 1, at a salary of $300. Mr. Cahill testified that he was at that time asked by some of the directors if the employment of plaintiff would also give the association the benefit of his (Mr. Cahill's) advice, to which he replied that it would. Of this conversation plaintiff had no knowledge. Bills for the services of plaintiff were presented in his own name, and paid to him, or to some one for him, by the defendant.

Plaintiff brought this suit, claiming that he was lawfully employed for a year from June 1, 1898, to June 1, 1899. Upon receiving notice of his discharge he promptly notified the company that he would claim employment for the year, and was ready to perform the services contracted for, and would hold the defendant liable. The defendant paid him for his services up to August 18, 1898, at the usual annual salary. There was submitted to the jury one question of fact, viz., "Was the employment of general counsel by the defendant at all times the employment of Russell C. Ostrander, and not of the firm of Cahill & Ostrander?" To which the jury answered, "Yes," and found a verdict for the plaintiff on the basis of annual hire.

*Cahill & Wood*, for appellant.

*Richard A. Montgomery*, for appellee.

GRANT,. J. ( *after stating the facts* ). 1. The principles of law applicable to this case are not in dispute, — in fact, are virtually conceded. They are: (1) A retainer of one member of a firm of attorneys is a retainer of the firm, in the absence of an agreement to the contrary; (2) a party may personally contract with one member of the firm for his legal services, and where such contract is proved it will be sustained. The same authorities that establish the first rule also recognize the second. Mechem, Partn. § 195; *Smith* v. *Brittenham*, 109 Ill. 540; *Harris* v. *Pearce*, 5 Ill. App. 622; *Williams* v. *More*, 63 Cal.

50. It follows that a personal contract with one member of the firm forbids the other member from employment against the client of his partner. The law would not permit the members of the firm to be employed on opposite sides of the same suit. When attorneys in partnership permit one member of their firm to make personal contracts for his services, it is upon the implied condition that the other members cannot be employed against their partner's client. They may assist him, but they cannot oppose him. The other members of the firm cannot recover for services rendered in such case to their partner's personal client, unless there is an express agreement to do so. The presumption is that such partner has made satisfactory arrangements with his partners, either for a division of his compensation, or that he has given them some other valuable consideration for services which they have agreed he may thus render. The agreement between Mr. Cahill and Mr. Ostrander illustrates what is usual in such cases. All the earnings of the two, whether for services rendered as partners or as individuals, were equally divided between them.

The main contention is one of fact, counsel for defendant insisting that Mr. Ostrander's employment was, as a matter of fact, the employment of the firm, and was so understood by all parties. If Mr. Cahill had been a member of the firm when plaintiff was employed, this contention would undoubtedly be true. But he was not, and this, in our judgment, changes entirely the aspect of the case. The contract of employment was made with plaintiff alone, and when Mr. Cahill was not only not connected with the plaintiff, but had no interest whatever in the firm. Did the relation between the plaintiff and the defendant change when Mr. Ostrander took Mr. Cahill in as a partner? If so, then the firm, and not plaintiff alone, were the counsel for the defendant from the 1st of January, 1891. Mr. Ostrander could not change his relation to the defendant without its consent; neither could the defendant change such relation without his consent. A

mutual agreement to change the relation was essential. What Mr. Cahill said to the directors when the resolution was passed employing Mr. Ostrander for one year could not operate to change the relation unless both parties knew and assented to it. If the directors had desired to have the firm appear as their general counsel, it could just as well have been done by inserting the firm name, instead of continuing the relation which had theretofore existed with Mr. Ostrander. What the reasons for not doing so were do not appear, and are immaterial. The fact is it did deal with him as its general counsel, advertised him as such, communicated with him as such, and finally discharged him as such, employing and paying him for a little over a month after the partnership was dissolved. To the case made by plaintiff's evidence defendant replies by evidence that Mr. Cahill informed the directors that they would receive the benefit of his services as well as those of Mr. Ostrander, and by the fact that they did consult him on various occasions, and that the firm name was used when suits at law were begun. A fact was involved. It is true there was but little dispute in the testimony upon which the finding of fact must rest, and whether legally it shows a separate employment of plaintiff, instead of the firm, we need not determine. The court left the question of fact to the jury, and they have settled it. We think there was evidence to sustain their conclusion. A. B., an attorney, has a contract with a railroad corporation to perform its legal services, and also has a general practice. He takes in a partner. Is his contract with the railroad company at an end ? Is the contract with the railroad company changed to a contract with the firm ? It seems to us that these questions must be answered in the negative, in the absence of some agreement or understanding to the contrary. How the new firm divides up the income from their practice concerns no one but themselves. It would be very natural for the attorney to say to the railroad corporation, "In my absence my partner will give you any legal advice, or conduct any

suits you desire him to do in the firm name." But this fact would not change the personal relations between the company and the attorney. That is precisely this case. Mr. Cahill, when Mr. Ostrander was city attorney, would undoubtedly have given the city any advice in the absence or sickness of Mr. Ostrander. Mr. Ostrander, when employed, might have said to the city, "You can have the benefit of Mr. Cahill's advice and services as well as mine;" but this would not make Mr. Cahill one of the city attorneys, although it had frequently taken his advice, and the firm had appeared in suits on behalf of the city.

2. The court instructed the jury as follows:

"I charge you that if, as a matter of fact, the plaintiff, personally, was employed by the defendant, as is claimed by the plaintiff, for annual periods, and at a stated annual salary or sum, from the 1st day of June, 1890, to and including the 1st day of June, 1898, and if, beginning the 1st day of June, 1898, he entered upon the performance of his duties of general counsel for the defendant, and performed the required services until on or about the 18th of August, and was then discharged by the defendant, the defendant thereafter continuing to use his name upon its letterheads and literature as general counsel, and to publish him to the world as such, during the remainder of the year, then the plaintiff is entitled to recover in this case the sum of $864."

Error is assigned upon that part of the above instruction referring to the use of plaintiff's name as general counsel upon the letterheads and literature of the defendant after his discharge. Plaintiff's name was not printed on any new letterheads or literature after his discharge, but his name was not erased from those whereon it had been previously printed. It is true that the use of his name in this manner after his discharge did not tend to prove the personal contract. Its use before that time was legitimate for that purpose. It was of no consequence that his name was not erased from the literature they had on hand and which they afterwards used. Able counsel tried the case, and it is fair to assume that the matter was fully explained by them to the jury. A jury of intelli-

gence could hardly be misled or prejudiced by the fact that defendant used letterheads, etc., which it had on hand, without erasing the name of Mr. Ostrander, after he had been discharged.   We think this error not of sufficient importance to justify a reversal of the case.

The judgment is affirmed.

HOOKER, C. J., and MOORE, J., concurred.  LONG and MONTGOMERY, JJ., did not sit.