## THE BOSSERT CORPORATION *v.* CITY OF NORWALK

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued November 6—decided December 17, 1968

*Robert A. Slavitt* and *George A. Vardamis,* with whom, on the brief, was *Abraham D. Slavitt,* for the appellant (plaintiff).

*John Keogh, Jr.,* and *Robert A. Fuller,* for the appellee (defendant).

THIM, J. The plaintiff applied to the planning commission of the city of Norwalk for review and approval of a proposed residential development to be located in a B residence zone on a tract of land approximately 8.52 acres in area. The easterly portion of the plaintiff's tract is on the boundary line between the city of Norwalk and the town of Westport. The proposed development is a permitted use under the building zone regulations in a B residence zone. Norwalk Zoning Regs. § 3 (A) (1929, as amended). The site plan submitted by the plaintiff provided for roads which would give access to and from two public highways, Wolfpit Avenue in Norwalk and West State Street in Westport. The proposal envisioned that Wolfpit Avenue would be accessible to the development via Orchard Hill Court and Orchard Hill Road and that West State Street would be reached by traveling over Hill's Lane. The planning commission reviewed the plan for several months, held public hearings, and approved the plan on October 7, 1964.

In accordance with the procedural requirements of the Norwalk zoning regulations, the planning commission transmitted the approved plan to the common council for its consideration. The plan was considered by the council at its meeting on October 13, 1964, at which time property owners residing in the area expressed opposition to the plan. The council resolved to table the plan and returned it to the planning commission with directions to review the proposed access to the Norwalk city streets by way of Orchard Hill Road. On November 5, 1964, the planning commission, after reviewing the pro-

posed access to Orchard Hill Road, reaffirmed its previous approval of the plan and notified the council that the proposed access to Orchard Hill Road was required by § 3.17 of the subdivision regulations.[1]

Following a second discussion of the plan, the common council appointed a committee to review the plan and to submit a report. In the report submitted on November 24, 1964, the committee recommended approval of the site plan subject to an amendment which would require "that a pedestrian walkway be created 20 feet wide to connect with Orchard Hill Ct. with a five inch bump on the Bossert Corp. property across the road, posted as a pedestrian walkway, but open for emergency access for fire and police vehicles, with a privet hedge on each side to reduce the proposed 50 ft. way to 20 feet." The council accepted the report and voted to approve the plan as altered by the amendment. The council's action was acceptable to the plaintiff.

Upon the advice of the corporation counsel, the common council referred the plan back to the planning commission for approval of the amendment proposed by the council. The planning commission refused to accept the amendment, and, in returning the plan to the council on January 7, 1965, the planning commission again reaffirmed its previous position. After receiving notice of the action taken by the planning commission, the council disapproved the plan on January 12, 1965, by a vote of nine to seven.

---

[1] "[Norwalk Subdivision Regs. § 3.17 (1963).] ACCESS TO NORWALK STREET SYSTEM: Where a subdivision is near a municipal boundary, all proposed lots must be directly connected with the Norwalk street system to provide access for school buses, police, fire and emergency vehicles and public works equipment."

The finding reveals that Alfred W. Burkhart, a member of the common council, was also a member of the law firm of Keogh, Candee and Burkhart. Burkhart's law firm represented opponents of the plaintiff's application, and a member of the law firm appeared before both the planning commission and the common council in opposition to the plaintiff's application. On three occasions when the plaintiff's application was before the council, Burkhart was acting as majority leader. On the two other occasions when the plaintiff's application was before the council, Burkhart was president of the council. On all occasions, however, when the application was being considered by the council, Burkhart disqualified himself and abstained from voting.

The plaintiff appealed to the Court of Common Pleas from the denial of its application by the common council. From the judgment dismissing the appeal, the plaintiff has taken the present appeal, claiming that the disapproval of its application by the common council is invalid because Burkhart's law firm represented opponents of the application. We agree with this claim. While considering the plaintiff's application, the common council was exercising the powers of the planning commission. *RK Development Corporation* v. *Norwalk*, 156 Conn. 369, 373, 242 A.2d 781. Thus, Burkhart's conduct was governed by § 8-21 of the General Statutes, which provides in pertinent part as follows: "No member of any planning commission and no member of any municipal agency exercising the powers of any planning commission, whether existing under the general statutes or under any special act, shall appear for or represent any person, firm or corporation or other entity in any matter pending before the planning or zoning commission or zoning board

of appeals or agency exercising the powers of any such commission or board in the same municipality, whether or not he is a member of the commission hearing such matter."

Under this statute, Burkhart was forbidden to represent any person in any matter pending before the common council or the planning commission. The law firm of which Burkhart was a member represented the opponents of the plaintiff's application. The retaining of Burkhart's law firm by the opponents of the application was equivalent to retaining each member of the firm although only one of the members may have been consulted. 7 Am. Jur. 2d, Attorneys at Law, § 91; see also *Ostrander* v. *Capitol Investment, Building & Loan Assn.,* 130 Mich. 312, 315, 89 N.W. 964; *MacFarland* v. *Altschuler,* 77 Neb. 138, 139, 108 N.W. 151; *Henn* v. *Clifford J. Heath, Inc.,* 101 N.J. Eq. 347, 349, 139 A. 406; *Kleinschmidt* v. *White,* 159 Okla. 234, 235, 15 P.2d 127; *DeVall* v. *DeVall,* 57 Ore. 128, 142, 109 P. 755. Because Burkhart was a member of the law firm which represented the opponents of the plaintiff's application and because he was to share in legal fees generated by this representation, we conclude that Burkhart himself was representing the opponents within the meaning of the statute. See *Erwin M. Jennings Co.* v. *Di Genova,* 107 Conn. 491, 498, 141 A. 866.

Burkhart did not cease to be a member of the common council by disqualifying himself from the proceedings relating to the plaintiff's application. The only way in which Burkhart's law firm could represent the opponents of the plaintiff's application and at the same time comply with § 8-21 of the General Statutes was for Burkhart to resign from the common council. This he did not do, and he con-

tinued to be a member of the common council despite his nonparticipation in the council's considerations of the plaintiff's application.

There is nothing in the record to suggest that Burkhart exerted any improper influence on his fellow councilmen. "The evil lies not in influence improperly exercised but rather in the creation of a situation tending to weaken public confidence and to undermine the sense of security of individual rights which the property owner must feel assured will always exist in the exercise of zoning power." *Daly* v. *Town Plan & Zoning Commission*, 150 Conn. 495, 500, 191 A.2d 250. Therefore, the trial court erred in not concluding that the decision of the common council was invalid because Burkhart's law firm represented opponents of the plaintiff's application while Burkhart continued as a member of the common council in violation of § 8-21 of the General Statutes.

Since we are sustaining the plaintiff's appeal, we consider only one other assignment of error which is likely to arise in further proceedings. In passing on the plaintiff's application, the common council was acting in an administrative capacity, and it was controlled by regulations relating to planned residential developments and subdivisions.[2] *RK Development Corporation* v. *Norwalk*, 156 Conn. 369, 375, 242 A.2d 781; *J & M Realty Co.* v. *Norwalk*, 156 Conn. 185, 190, 239 A.2d 534. If the plan submitted conforms to the regulations, the council has no discretion or choice but to approve it. *RK Development Corporation* v. *Norwalk*, supra.

It is obvious that the only reason prompting the disapproval of the plaintiff's application by the com-

---

[2] These regulations ars set forth in the case of *RK Development Corporation* v. *Norwalk*, 156 Conn. 369, 376, 242 A.2d 781.

mon council was the refusal of the planning commission to accept the amendment proposed by the council. This amendment is, however, clearly contrary to § 3.17 of the subdivision regulations, which has been set out previously in this opinion. Since the amendment proposed by the common council was illegal, the refusal of the planning commission to accept it did not justify the council's disapproval of the plan.

In conclusion, we note that there is no merit to the defendant's claim that we lack jurisdiction over the instant case because of the lack of a finding that the plaintiff was aggrieved. The record recites, in at least three places, that the plaintiff was the owner of the property in question. As the owner of the tract in issue, the plaintiff was certainly aggrieved by the action of the common council.

There is error, the judgment is set aside and the case is remanded with direction to sustain the appeal.

In this opinion the other judges concurred.