[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION CT Page 6934
The plaintiff herein brings this appeal from the denial of its application to the defendant commission for permission to conduct a regulated activity in a buffer zone, to wit: construction of a single family dwelling on a residential lot, (Lot #5 on Lincoln Lane).
The court held a hearing on the appeal on January 27, 1992 and finds the plaintiff, as owner of the subject premises, is aggrieved and entitled to take this appeal. Bossert Corp. v. Norwalk, 157 Conn. 279.
All parties hereto have filed briefs and the plaintiff and defendant commission have filed post-trial briefs.
The record filed with the court shows that the defendant commission held a hearing on September 18, 1990 on the subject application. At that time the defendant commission heard testimony from the attorney and engineer for the plaintiff, as well as from several neighboring property owners. The only expert testimony was offered by Henry Moeller, a soil scientist, who also submitted a written report to the defendant commission. The commission also received reports from its staff.
Following the hearing, the commission voted to deny the application.
This appeal followed.
When a land use agency has stated the reasons for its action, the sole question for the court to decide is whether there is support for such reasons in the record and whether the grounds are pertinent to the considerations the agency is required to apply under its regulations. First Hartford Realty Corp. v. Plan and Zoning Commission, 165 Conn. 533,543 cited in Huck v. Inland Wetlands and Watercourses Agency,203 Conn. 525, 540. The appeal must be sustained if there is substantial evidence to support it in the record. Huck, ibid.
 [General Statutes] Section 22a-42 (a)(d) requires the agency, when [denying] a permit, to "consider the factors set forth in Section 22a-41, and such agency shall state upon the records the reason for its decision." Section 22a-41 requires the agency to consider "all relevant facts and circumstances," CT Page 6935 including but not limited to: "(1) The environmental impact of the proposed action; (2) The alternatives to the proposed action; (3) The relationship between short-term uses of the environment and the maintenance and enhancement of long-term productivity; (4) Irreversible and irretrievable commitments of resources which would be involved in the proposed activity; (5) The character and degree of injury to, or interference with, safety, health or the reasonable use of property which is caused or threatened; and (6) The suitability or unsuitability of such activity to the area for which it is proposed."
 The statute does not mandate specific reference in the finding and conclusion to any one of the six factors in a "balancing test." East Haven Economic Development Commission v. D.E.P., 36 Conn. Sup. 1, 8, 409 A.2d 158 (1979).
Fromer v. Boyer-Napert Partnership, 42 Conn. Sup. 57,64-65.
The defendant commission's regulations (Section 6) generally track Section 22a-41 but also incorporates the provision set forth in subsection (b) thereof as to feasible and prudent alternatives. The commission's regulations also address mitigation and define "environmental impact."
Following the hearing, the commission voted by a 3-2
vote to deny the application for the following reasons:
 1. The activity may cause loss of flood storage capacity in the adjacent wetland.
 2. The Commission finds that the buffer zone itself acts as a substantial storage area for flood water and has evidence in the winter that there is a good deal of ponding.
 3. The Commission finds that the livability of the house is of concern, that is the health, safety, and welfare of the residents. Additionally, the Commission is of the view that effective control over increased use of the property — grading for a rear yard and/or expansion of the house — is limited.
The commission had before it a report of its staff which, in pertinent part, reads as follows: CT Page 6936
Project Description — Lot 5
 This project involves a resubmission of an application for a single-family house on a .95 acre lot. A previous application was denied. The denial letter is attached. Previous to July 1, 1987, this lot was considered "a lot of record" — a lot which was part of a subdivision approved prior to 1974. Virtually the entire lot is in the 75-ft. buffer zone.
 The current application outlines the various piles of soil which were placed on the lot during the construction of Lincoln Lane. The house site has been reduced by approximately 500 sq. ft. (the house is 1,500 sq. ft. plus approximately 500 sq. ft. garage). At its closest point, the house is 25 ft. from Wetland Flag #20. There is no grading within the wetlands. Yard drains are proposed outside of the wetland area, and the Town Engineer has suggested another one to be located on the southeast side of the lot, presumably where a swale is currently proposed. All drainage relating to house construction appears to be designed so as not to affect neighboring properties. (Emphasis added)
 All soils were mapped by Henry T. Moeller, Soils Consulting Service. A field trip was made to the site by the Conservation Commission, Mr. Moeller, Mr. Mancini, and Mr. Lawrence on May 22, 1990.
Lot #5 — Site Description
 This lot is depicted as being entirely inland wetlands soils by the Official Inland Wetlands and Watercourses Map. Mr. Moeller's mapping indicates that the wetlands lie along the western edge of the lot and then extends into the middle section of the lot. There was standing water in the vicinity of flags #4 through #8 in the spring of 1990.
 The wetland soils are Wilbraham and Menlo (WtA, MpA) very stony silt loams. In general terms, these are upland soils located over compact glacial till and have a high water table. A more complete description of the soil appears on page 6 of Mr. Moeller's Soils Report. There are small piles of rocky fill supporting vegetation throughout the lot.
CT Page 6937
A. The issue of storage retention was addressed by Mr. Moeller. Transcript R-32, p. 17. In response to a question on this issue he responded that after a storm the wetlands would still have storm retention and that the ponding of water in the site would be minimized by grading. At page 18, Dr. Sharpless suggested that the proposed construction would take away some of the functions of the wetland. Mr. Moeller replied that any loss was insignificant. Further, he noted that the discussion at that point was with respect to runoff not the maintenance of the wetland, which he noted would still be saturated.
In short, the only expert testimony in the record was to the effect that there will be no loss of flood storage capacity in the wetland. There was considerable discussion between Dr. Sharpless and the plaintiff's engineer as to drainage and hydrology but no expert evidence as to any impact on the wetland. In his report (R-6) Mr. Moeller noted the total area of wetland soils is extremely small and not a part of any significant area of wetlands — i.e., not part of "an interrelated web of nature." General Statutes, Sec. 22a-36.
If the commission is relying on the layman knowledge of its members, it has not put the basis of such knowledge on the record. Welch v. ZBA, 158 Conn. 208, 216. In any event, impact on the capacity of a wetland to store water requires an expert opinion — which, in this case — does not support the reason. Feinson v. Conservation Comm., 180 Conn. 421,428.
Under its regulations, the commission may regulate an activity in a buffer zone if it may affect the adjacent wetland. Madrid Corp. v. Inland Wetlands Agency, 25 Conn. App. 446,449. The instant regulations merely extend the definition of "regulated area" to the buffer zone. The commission may regulate activities in the buffer zone only to the extent that such activities "may have an adverse effect in a regulated area." Regulations. Subsection 4.1. There was no expert testimony that the proposal would have any adverse effect on the wetlands as mapped.
B. As to the second reason, the finding by the commission that the buffer zone itself acts as a substantial storage area for flood water, there is likewise no expert testimony to support such a finding. The only expert testimony as to soil types was offered by Mr. Moeller as to the soil types in the mapped wetlands. The soils in the buffer area are not wetland soils. There was no evidence as to the types which CT Page 6938 would be basic to water retention capacity. Further, the plaintiff's engineer prepared the site plan which addressed the disposal of water on the site after construction, i.e., certain drains, yard drains, swales, etc. He further noted that the watershed for the lot is extremely small (Transcript, page 13). He also stated that he addressed water runoff in accordance with the suggestion of the Town Engineer (Transcript, page 16). The sole basis of this reason appears to be an unsupported statement by Dr. Sharpless (Transcript, page 22).
The second part of this reason refers to ponding of water in winter outside the wetlands. Mr. Moeller addressed this issue (Transcript, page 9), noting that the mere fact of ponding does not permit regulation of an area as a wetland.
C. The third reason concerns — "The Livability of the house." Whatever that may mean, the court can find no authority to support regulations based upon such a concept. ". . . local inland wetland bodies are not little environmental protection agencies." Connecticut Fund for the Environment, Inc. v. Stamford, 192 Conn. 247, 250. The commission in this case can only consider "the impact on the regulated area." Ibid. Health, safety and welfare are cited (Transcript, page 22) with no supporting evidence.
Further, its concern for future proposed improvements to the structure appears to be based upon a comment by Dr. Sharpless (Transcript, page 22). Obviously, what may transpire in the future is sheer speculation and any proposal for expansion would be subject to any controls in existence at the time.
It appears to the court that this case falls clearly within the ambit of the holding in Tanner v. Conservation Commission, 15 Conn. App. 336, 341; ". . . it (the commission) must not disregard the only expert evidence available on the issue when the commission members lack their own expertise or knowledge."
The court finds that there is no substantial evidence to support either of the first two reasons and that the third reason is not pertinent to the considerations the commission was bound to address. For all that appears to the court the commission was primarily concerned with the impact downstream of surface water drained from the site. Calves Tongue Brook is not the concern of the commission in this matter. See Connecticut Fund for the Environment, supra. CT Page 6939
The appeal is sustained.
The matter is remanded to the defendant commission solely for the purpose of determining whether a feasible and prudent alternative exists. If the commission does not so find, it is directed to issue the requested permit. The record shows this is the second application for the same premises and appears to address the previous application. The court presumes the commission will take these factors into consideration in its deliberation.
Burns, J.