STATEMENT OF THE CASE
The plaintiff, Adelbert Hallisey, appeals a decision of the defendant, East Windsor Planning and Zoning Commission [Commission], denying his proposed amendment to the zoning regulations of the Town of East Windsor. The Commission acted under the authority of General Statutes 8-3. The plaintiff appeals pursuant to General Statutes 8-8.
PROCEDURAL HISTORY
Notice of the decision of the Commission was published on December 15, 1992. (Return of Record [ROR], Items 16 A, B, C). The plaintiff served the Commission by leaving the appeal papers with Robert Alaimo, Chairman of the Commission, on December 29, 1992. (Sheriff's return). The East Windsor town clerk was served on January 4, 1993. (Sheriff's return). The appeal was filed with the clerk of the superior court on January 12, 1993. On March 8, 1993, the Commission filed an answer and return of record. The Commission filed a supplemental return of record on April 6, 1993. Each party filed a brief. The appeal was heard by the court, Smith, J., on November 4, 1993. The plaintiff offered testimony at the appeal hearing regarding aggrievement.
FACTS
The plaintiff owns property located in the Town of East Windsor. (Complaint, para. 1, para. 5; Answer, para. 1; ROR, Item CT Page 2085 22, p. 5). On or about June 30, 1992, the plaintiff filed an application with the Commission proposing an amendment to the town zoning regulations to add anew section that would allow additional manufactured mobile homes to be built in East Windsor adjacent to existing manufactured mobile home parks. (ROR, Items 1, 2, 3). On September 8, 1992, the Commission held a public hearing on the plaintiff's application. (ROR, Item 22, p. 1). At the hearing, the proposed amendment was discussed at length. (ROR, Item 22, pp. 1-62). The plaintiff explained the major points of the amendment: 1) control would remain with the board through a permit requirement, 2) twenty percent of the homes would be required to conform to affordable housing requirements, 3) the regulation had been written to conform with existing regulations and 4) the regulation would allow East Windsor to satisfy its affordable housing compact with the Capital Region Council of Governments [CRCOG]. (ROR, Item 22, pp. 8-16). CRCOG's review of the proposed amendment found no apparent conflict with regional plans and policies or the concerns of neighboring towns. (ROR, Item 8). CRCOG also supported the attempt to create affordable housing. (ROR, Item 8). The Town of East Windsor Water Pollution Control Authority noted that there was no available sewer capacity. (ROR, Item 7). The town's attorney expressed concern as to how the affordable housing requirement would be enforced and monitored; questioned footage, parking, and maximum density; and expressed concern because the Commission would have less discretion than it did under comparable subdivision regulations .to impose open space and recreational amenities on the mobile home parks. (ROR, Item 10). The Commission was mainly concerned with sewer capacity, the size and affordability of the manufactured mobile homes, and the fact that the regulation would affect such a small percentage of the population. (ROR, Item 22, pp. 21, 24-26, 33-47, 68-69). The Commission and the plaintiff noted that the plaintiff's property adjacent to his existing manufactured mobile home park was the only property that would qualify for a permit under this regulation. (ROR, Item 22, pp. 68, 69). The Commission decided, with the agreement of the plaintiff, that the final judgment would be postponed pending the outcome of the November 7, 1992 sewer referendum. (ROR, Item 22, pp. 59-62, 66). The sewer referendum was approved on November 7, 1992 by the voters (ROR, Item 22, p. 65). By final decision dated December 15, 1992, the Commission voted unanimously to deny the proposed amendment. (ROR, Items 16A and B). The reasons given by the Commission for its denial of the amendment application are as follows:
Chairman Alaimo questioned if the Town of East CT Page 2086 Windsor was ready to accept a regulation that applies to such a small number of people and questions if it serves the Town. Chairman Alaimo cited the revision of the Plan of Development which includes provisions for affordable housing. Commissioner Filipone cited the restrictiveness of the application which applies only to one location. Chairman Alaimo cited the current lack of sewer capacity and the length of time before additional capacity is available; he felt delaying the approval of the amendment would not place an undue burden on the applicant Commissioner Wyse concurred with these comments.
(ROR, Item 16B).
JURISDICTION
Aggrievement
Any person who is aggrieved by a decision of a zoning commission "may . . .take an appeal to the superior court." General Statutes 8-8(a). Aggrievement is a statutory prerequisite to maintaining an appeal. See Smith v. Planning and Zoning Board,203 Conn. 317, 321, 524 A.2d 1128 (1987). The plaintiff has the burden of proving aggrievement. See I.R. Stich Associates, Inc. v. Town Council, 155 Conn. 1, 3, 229 A.2d 545 (1967). The plaintiff is required to show that he "ha[s] a specific, personal and legal interest in the subject matter of the decision as distinguished from a general interest such as is the concern of all members of the community and that . . . [he is] specially and injuriously affected in . . . [his] property or other legal rights." Fletcher v. Planning Zoning Commission, 158 Conn. 497, 501-02, 264 A.2d 566
(1969), quoting Krejpcio v. Zoning Board of Appeals, 152 Conn. 657,660, 211 A.2d 687 (1965). The owner of the property which is the subject matter of the application to the agency is always aggrieved. Bossert Corp. v. Norwalk, 157 Conn. 279, 285,253 A.2d 39 (1968). However, the plaintiff must show he owns the property. Id. General Statutes 8-8(b) states that "any person owning land which abuts. . . any portion of the land involved in any decision of [a] zoning authority. . . may. . . take an appeal to the superior court." Nick v. Planning Zoning Commission, 6 Conn. App. 110,112, 503 A.2d 620 (1986). CT Page 2087
In the present case, the plaintiff testified at the hearing before this court that he is the owner of the property to which the amendment would have applied and that he is the owner of property that abuts the subject property. The plaintiff testified that while the value of the subject property remained the same, he was being denied the opportunity to develop the subject property in conjunction with the use already existing on the abutting property. The transcripts of the Commission hearings and testimony presented by the plaintiff show that the subject property was the only property in East Windsor that would have been affected by the proposed amendment. (ROR, Item 22, pp. 68-69). The court finds that, based on the foregoing information, the plaintiff is aggrieved.
Timeliness
The appeal must be commenced within fifteen days of publication of the notice of the Commission's decision in the newspaper. General Statutes 8-8(a). The notice of the decision of the Commission was published on December 15, 1992. (ROR, Item 16A). The sheriff's return indicates that service was made on the chairman of the Commission on December 29, 1992 and on the town clerk on January 4, 1993. (Sheriff's return). Therefore, the plaintiff has met the timeliness requirement for pursuing this appeal.
Scope of Review
"In adopting or amending zoning regulations, the commission acts in a legislative capacity." Bernhard Co. v. Planning and Zoning Commission, 194 Conn. 152, 164, 479 A.2d 801 (1984), citing Parks v. Planning and Zoning Commission, 178 Conn. 657, 660,425 A.2d 100 (1929).
 In such circumstances, it is not the function of the court to retry the case. Conclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the agency. The question is not whether the trial court would have reached the same conclusion but whether the record before the CT Page 2088 agency supports the decision reached.
Burnham v. Planning Zoning Commission, 189 Conn. 261, 265,455 A.2d 339 (1983), citing Calandro v. Zoning Commission, 176 Conn. 439,444, 408 A.2d 229 (1979). "The action of the commission should be sustained if even one of the stated reasons is sufficient." Burnham v. Planning Zoning Commission, supra, citing Goldberg v. Zoning Commission, 173 Conn. 23, 25,376 A.2d 385 (1977).
 Courts cannot substitute their judgment for the wide and liberal discretion vested in local zoning authorities when they have acted within their prescribed legislative powers. Courts must not disturb the decision of a zoning commission unless the party aggrieved by the decision established that the commission acted arbitrarily or illegally.
Ginsburg v. Zoning Commission of the Town of New Milford,6 Conn. L. Rptr. 69 (February 25, 1992, Pickett, J.); First Hartford Realty Corp. v. Plan and Zoning Commission of the Town of Bloomfield,165 Conn. 533, 540-41, 338 A.2d 490 (1973). "The courts allow zoning authorities this discretion in determining the public need and the means of meeting it, because the local authority lives close to the circumstances and conditions which create the problem and shape the solution" (Citation omitted.) Burnham v. Planning and Zoning Commission, supra, 266.
DISCUSSION
The plaintiff argues that the Commission acted arbitrarily and abused its discretion because the Commission's decision is contrary to General Statutes 8-2, the town's comprehensive plan and plan of development, and because the reasons contained in the record do not support the Commission's decision. The plaintiff argues that the Commission did not act in accordance with General Statutes 8-2
because the statute encourages the development of housing opportunities, housing choices, economic diversity in housing, and housing for both low and moderate income households. The plaintiff argues that manufactured mobile homes meet the requirements of General Statutes 8-2, therefore, the Commission is not acting in accordance with the statute because the town zoning regulations do not allow manufactured mobile homes. The plaintiff also argues that the decision violated General Statutes 8-2 in that CT Page 2089
 the defendant's decision does not promote the best interests of the entire community because the decision prevents the development of manufactured mobile home parks in a town where the zoning regulations presently forbid not only new development of mobile home parks, but also the inclusion of any new mobile home units in an existing mobile home park.
(Plaintiff's brief, p. 9). The plaintiff next argues that the Commission's decision is not in accordance with the town's plan of development. The plaintiff argues that the plan of development's goals and policies "provide for a variety of housing options to meet different housing needs and desires" and states that the Town of East Windsor should "allow for a variety of housing types and densities." (Plaintiff's brief, p. 9). The plaintiff's final argument is that the reasons stated in the record do not support the Commission's decision.
The Commission argues that because it chose not to amend the zoning regulations, its decision cannot be the subject of review. The Commission argues that the court is unable to require that the Commission amend the regulation and, therefore, has no remedy to offer the plaintiff. The court in Rinaldi v. Zoning and Planning Commission, 2 Conn. L. Rptr. 844, 846 (July 6, 1990, Corradino, J.), found that "the legislature has given aggrieved parties the right to appeal and the scope of review cannot be so narrowly defined as to take away that right." The court in Rinaldi further stated:
 The court in Suffield Heights Corp. v. Town Planning Commission, at 144 Conn. 428 fairly summarized the law on this point. . . "a court cannot take the view in every case that the discretion exercised by the local zoning authority must not be disturbed, for if it did the right of appeal would be empty. Therefore, the court can grant relief upon appeal in those cases where the local authority has acted arbitrarily or illegally and consequently abused the discretion entrusted to it."
Id. The court may review the denial of the amendment to the zoning CT Page 2090 regulations.
General Statutes (rev. to 1991) 8-2 states in pertinent part:
 (a) The zoning commission of each city, town or borough is authorized to regulate, within the limits of such municipality. . . . Such regulations shall be made in accordance with a comprehensive plan and shall be designed to lessen congestion in the streets; to secure safety from fire, panic, flood and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population and to facilitate the adequate provision for transportation, water, sewerage, schools, parks and other public requirements. Such regulations shall be made with reasonable consideration as to the character of the district and its peculiar suitability for particular uses and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality. . . .
(Emphasis added.) "A comprehensive plan has been defined as a general plan to control and direct the use and development of property in a municipality or a large part thereof by dividing it into districts according to the present and potential use of the properties." First Hartford Realty Corp. v. Plan and Zoning Commission of the Town of Bloomfield, supra, quoting Summ v. Zoning Commission, 150 Conn. 79, 87, 186 A.2d 160 (1962). The comprehensive plan of zoning is the plan found in the zoning regulations and maps. See Mott's Realty Corporation v. Town Plan Zoning Commission, 152 Conn. 535, 540, 209 A.2d 179 (1965). "The requirement of a comprehensive plan is generally satisfied when the zoning authority acts with the intention of promoting the best interests of the entire community." Morningside Assn. v. Planning Zoning Board, 162 Conn. 154, 162, 292 A.2d 893 (1972).
The regulations of the Town of East Windsor provide:
Section 1. Purpose CT Page 2091
 The purpose of these Regulations is to promote the health and the general welfare of the Town of East Windsor, to prevent the overcrowding of land and to encourage the most appropriate use of land within the Town, to increase the amenities of the Town, and to provide an adequate supply of light and air and reduce the hazard from fire, flood, panic, and other dangers by regulating the location, size, height and use of buildings and other structures and the size and use of lots.
(ROR, Town of East Windsor Zoning Regulations, p. 1).
 Section 5.1.15 Non-Conforming Trailers and Trailer Parks
 Non-conforming trailer parks in the Town of East Windsor may be maintained provided that there is no increase in the park area and no increase in the number of existing trailer units in the park. Before an existing trailer maybe replaced, the applicant shall apply for a zoning permit and submit a plot plan in accordance with Section 13.1.1 of these Regulations. . . .
(ROR, Town of East Windsor Zoning Regulations, p. 23).
 Section 9.1 Permitted Uses in the M-1 Industrial Zone
 In those portions of the Town so indicated on the latest approved Zoning Map, only the following uses shall be permitted.
Section 9.1.1.
 Those uses listed in Table 2, Commercial, Industrial, and Special Uses, as being permitted in the M-1 industrial zone shall be permitted, except no residential use shall be permitted.
(ROR, Town of East Windsor Zoning Regulations, p. 56). CT Page 2092
The current plan of development states the following regarding the town's goals and policies:
Section 2. Goals and Policies
 Statement of Goals. 1. Preserve and maintain the essentially rural character of East Windsor. 2. Maintain a pattern of land use that promotes the health, safety and welfare of the town and that creates a pleasing environment in which to live and work. 3. Protect the town's natural, cultural and historical resources. 4. Guide future development of the land so as to ensure that growth occurs in an orderly manner and takes place in appropriate locations. 5. Provide for a variety of housing options to meet different housing needs and desires. 6. Provide for an economic base of business and industry to foster local employment opportunities and a favorable tax base. . . . 8. Provide for sufficient open space, a range of recreational opportunities, and adequate community facilities. . . .
(ROR, Item 21, p. 38, 39).
 Statement of Policies. 1. Provide for a balance of land uses that maintains the essentially rural character of the town. 2. Encourage development patterns which relate to the natural features and conditions of the land. 3. Allow a more diverse land use pattern where public water and sewer services are available. 4. Encourage the preservation of agricultural land. . . .
(ROR, Item 21, p. 39).
The reasons stated in the record for the denial include the Commission's concern that there was no existing sewer capacity at the time of the decision; that the amendment would only benefit a small amount of people and one location; that manufactured mobile homes were not in fact any more affordable than regular homes; and CT Page 2093 a, concern regarding the impact of taking more industrial land and devoting it to residential use and the density of such a project.
(ROR, Item 22, pp. 21, 44, 56, 68-69).
The record indicates that the Commission had several concerns regarding the general welfare and best interests of the town. (ROR, Item 22). Specifically, the concern voiced by the Commission was that the proposed amendment was too site specific, would benefit only a small number of people, and would exclude the use of any other sites. (ROR, Item 17, p. 10; Item 22, pp. 25, 26, 68). The record reflects that the Commission was also concerned with the high density of the project, approximately sixty-five units on a twenty acre lot, including open spaces and the lack of infrastructure, specifically sewer hook-ups. (ROR, Item 18, p. 7; Item 22, pp. 21, 24, 69). Vice Chairman Alaimo noted on the record that
 current regulations would never allow the construction of that many structures on such a location; he further noted the proposed minimum mobile home size of eight hundred and sixty-four (864) square feet would not be allowable in any other regulations.
(ROR, Item 17, p. 10; Item 22, p. 21). A reading of the zoning regulations cited above indicate that the proposed amendment would create a nonconforming residential use in an M-1 (industrial) zone. (ROR, Item 3; 18, pp. 5, 6; Item 22, pp. 59, 69). The approval of the plaintiff's application would violate sections 5.1.15. and 9.1. The record reflects that the Commission acted in accordance with the town zoning regulations. The record contains evidence that reflects the Commission's concern for promoting the best interests of the community as provided in General Statutes 8-2(a) because it acted in accordance with the town's comprehensive plan.
As to the failure to comply with the plan of development, the record reflects that a variety of housing was only one factor to be considered along with other factors enumerated in the plan of development. (ROR, Item 21). The plan of development reflects a desire to maintain the rural character of East Windsor, a desire to maintain a pattern of use that contribute to the general welfare, health, and safety of the residents and a desire to ensure that growth occurs in appropriate location's. The Commission based its CT Page 2094 decision on the effect on the community's health, with regard to sewer capacity; the effect on its general welfare, because the amendment would only benefit a small group of people; the character of the town and location of the homes, because the homes would be built at a higher density than comparable single family homes and would be built in an industrial zone; and the Commission's finding that mobile homes weren't necessarily "affordable." (ROR, Item 22, pp. 21, 44, 56, 68-69). Accordingly, the Commission's decision is supported by the evidence in the record and the plaintiff's appeal should be dismissed.
ALLEN W. SMITH Judge of the Superior Court