[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs, RR Pool Home, Inc. [RR], Stephen J. Kerekes, Jr., Betty S. Kerekes, O. H. Stark and Betty W. Stark, appeal pursuant to General Statutes, § 8-8, the decision of the defendant, the Zoning Board of Appeals of Ridgefield [ZBA], sustaining the cease and desist order of the zoning enforcement officer [ZEO], William Baldelli. The Town of Ridgefield is also named as a defendant. The ZBA acted pursuant to General Statutes, § 8-6.
The plaintiffs, Stephen J. Kerekes, Jr., Betty S. Kerekes, O. H. Stark and Betty W. Stark, are the owners and RR is the tenant and option purchaser of the property that is the subject of this appeal. The property is located in a B-2 zone, in which retail stores and shops have been prohibited since February 6, 1976. (ROR, Item VIII, p. 4.)
On March 23, 1992, the ZEO issued a cease and desist order to the plaintiffs, which stated: "[a]n investigation of the subject premises by this office discloses that the following conditions presently exist: The outdoor storage/display of furniture, etc. is an expansion of a nonconforming use." The cease and desist order also states: "[t]his condition violates sections 304.0(2)(a), 304.0(2)(b) and 412.0.A of the Town of Ridgefield Zoning Regulations." CT Page 11127-K
Section 304.0(2) states in pertinent part:
 Nonconforming use of land. Where no structure is involved, the nonconforming use of land may be continued, provided, however:
 (a) That no nonconforming use shall be enlarged or increased, nor shall it be extended to occupy a greater area of land than that occupied by such use at the time of the adoption of the zoning regulations to which it fails to comply, unless specifically allowed by other provisions in this [sic] regulations.
 (b) That no such nonconforming use shall be moved in whole or in part to any other portion of the lot or parcel of land occupied by such nonconforming use at the time of the adoption of this regulation.
Section 412.0.A, Light Industry B-2 zone, states in pertinent part: "[n]o use of land . . . shall be established, altered or expanded except in conformity with these regulations." Section 412.0.A does not allow retail uses.
The plaintiffs appealed the cease and desist order to the ZBA. On June 1, 1992, the ZBA held a hearing regarding the plaintiffs' appeal. On June 15, 1992, the ZBA voted unanimously to sustain the ZEO's cease and desist order. In its decision sustaining the cease and desist order, the ZBA stated eight reasons: (1) the plaintiffs failed to demonstrate that the ZEO made an error in the cease and desist order; (2) based on a 1990 subdivision, the ZEO did not err in ordering the plaintiffs to stop using parking areas and other areas on the property for the outside sale of furniture and accessories; (3) the ZEO's action was justified because he was upholding the subdivision and special permit maps; (4) the ZEO was enforcing a previous ruling of the ZBA denying a variance, appeal #92-007; (5) an expansion of a nonconforming retail use existed on the plaintiffs' property; (6) the plaintiffs abandoned all uses of the designated parking area prior to the subdivision; (7) any expansion of retail use would require additional parking beyond the 17 allotted spaces and by their outdoor use the plaintiffs have used many of the 17 spaces; and (8) the plaintiffs could not prevail on their argument that a nearby property was illegally using an outdoor sales area. CT Page 11127-L
The plaintiffs now appeal to this court from the ZBA's decision sustaining the cease and desist order.
The burden is on the plaintiff to allege and prove aggrievement. McNally v. Zoning Commission, 225 Conn. 1, 5-6,621 A.2d 279 (1993).
The warranty deed submitted by the plaintiffs names only Stephen J. Kerekes and Betty S. Kerekes as the owners of the subject property. (Plaintiffs; Exhibit 13). The cease and desist order is directed to the Kerekes and the Starks as owners of the property. The cease and desist order does not mention RR. An owner of the subject property is aggrieved and entitled to bring an appeal. Winchester Woods Associates v. Planning andZoning Commission, supra, 308; Bossert Corp. v. Norwalk,157 Conn. 279, 285, 253 A.2d 39 (1968). Kerekes and Starks are aggrieved parties and are thus entitled to bring this appeal. The issue of RR's lack of aggrievement is fully discussed in the memorandum of decision regarding RR's appeal of the ZBA's decision denying its application for variances. See RR Pool Home, Inc. v. Ridgefield Zoning Board of Appeals, judicial district of Danbury, D.N. 30 87 61. RR is not aggrieved because of a gap in its leases which for several months left it a tenant at will. Because, however, Kerekes and Starks are aggrieved, this appeal is properly before the court, regardless of whether RR is also an aggrieved party.
When a zoning board of appeals acts to determine "the reasonableness of a decision of the zoning enforcement officer," it acts "administratively in a quasi-judicial capacity."Lawrence v. Zoning Board of Appeals, 158 Conn. 509, 514,264 A.2d 552 (1969). "The board is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal." Schwartz v. Planning and Zoning Commission, 208 Conn. 146,152, 543 A.2d 1339 (1988). "Conclusions reached by the [board] must be upheld by the trial court if they are reasonably supported by the record." Primerica v. Planning and ZoningCommission, 211 Conn. 85, 96, 558 A.2d 646 (1989). The plaintiff has the burden of proof to demonstrate that the board's actions were improper. Adolphson v. Zoning Board ofAppeals, 205 Conn. 703, 707, 535 A.2d 799 (1988).
While 304.0(2)(a) and (b) presume a prior nonconforming use CT Page 11127-M of the land, (b) provides that movement of the nonconforming use from one portion of the land to another is prohibited. The plaintiffs claim that because the ZEO's statement in the cease and desist order related only to an expansion of a nonconforming use, not to the movement of a nonconforming use, "there is a fatal inconsistency and conflict in the charge." However, citation of 304.0(2)(b) in the cease and desist order reasonably provided the plaintiffs with notice of a violation of that section, even though the preceding sentence only referred to an expansion of a nonconforming use.
The plaintiffs argue that the ZBA considered allegations, facts and theories beyond those given in the cease and desist order and that the ZBA changed theories in upholding the cease and desist order. Thus, the plaintiffs argue that the ZBA's action violated their due process right to notice and went beyond its authority to hear and decide appeals pursuant to General Statutes § 8-6.
Among the reasons given by the ZBA for its decision was that an expansion of a nonconforming retail use existed on the property. The cease and desist order expressly stated that the plaintiffs had impermissibly expanded a nonconforming use. In upholding the cease and desist order, the ZBA stated as a reason the same ground as the ZEO expressly cited for issuing the cease and desist order. The ZBA did not "change theories" for upholding the cease and desist order. The plaintiffs had adequate notice of the matters to be heard. While other reasons for upholding the cease and desist order were discussed at the public hearing and were stated in the decision, the ZBA considered the ground stated in the cease and desist order and its decision cited the expansion of a nonconforming use on the property as a reason for upholding the cease and desist order. The plaintiffs did not object at the hearing to discussions regarding any other alleged theories for upholding the cease and desist order. The court finds that the plaintiffs had adequate notice of the matters to be heard, and had a reasonable opportunity to know the claims of the opposing party and to meet them. The plaintiffs have not met their burden of showing that they did not receive adequate notice, or that the ZBA exceeded its authority under General Statutes § 8-6 to "hear and decide appeals where it is alleged that there is an error in any order, requirement or decision made by the official charged with the enforcement" of the zoning regulations. CT Page 11127-N
The plaintiffs claim that the decision of the ZBA was not a collective statement because each of the ZBA members submitted "voting sheets" upon which each member stated individual reasons for upholding the cease and desist order; therefore the reasons stated for the ZBA's decision are an accumulation of the written reasons of the individual members, and were never voted upon by the ZBA as a collective act. The plaintiffs assert that the reasons given for the decision are therefore invalid and illegal as a violation of General Statutes § 8-7 which requires that the Board "state upon its record the reason for its decision."
"The principle that a court should confine its review to the reasons given by a zoning agency does not apply to any utterances, however incomplete, by the members of the agency subsequent to their vote. It applies where the agency has rendered a formal, official, collective statement of reasons for its action." Protect Hamden/North Haven from Excessive Traffic Pollution, Inc. v. Planning Zoning Commission, 220 Conn. 527,544, 600 A.2d 757 (1991). Where members state individual reasons prior to voting, these individual views are not available to show the reasons for, or the grounds of, the board's decision. West Hartford Interfaith Coalition v. TownCouncil, 228 Conn. 498, 515, 636 A.2d 1342 (1994). The failure of the zoning agency to give such reasons requires the court to search the entire record to find a basis for the agency's decision. Protect Hamden/North Haven from Excessive Traffic Pollution, Inc. v. Planning Zoning Commission, supra, 544. Where the reasons given by the members of the agency do not amount to a formal, collective, official statement of the agency, the trial court is obliged to search the record for a basis upon which to uphold the agency's decision. Id., 545; seeWest Hartford Interfaith Coalition, Inc. v. Town Council, supra,228 Conn. 514. While the voting sheets in the record show the various reasons given by the individual ZBA members for sustaining the cease and desist order, the decision issued by the ZBA contains a formal list of reasons for the ZBA's decision. However, even if the court found that the reasons given by the ZBA were not a formal, collective, official statement of the ZBA, but rather were each member's individual reason for sustaining the cease and desist order, the court may search the record for a basis upon which to uphold the ZBA's decision. Accordingly, the plaintiffs' appeal is not sustained on the ground that the ZBA failed to state collective reasons. CT Page 11127-O
The plaintiffs argue that the Ridgefield Zoning Regulations § 412.0.A does not apply to outdoor displays but only to retail or wholesale stores and shops. The plaintiffs maintain that the presence of an outdoor display of sale items is not a nonconforming use, but rather is permitted because the zoning regulations do not explicitly prohibit such a display. The plaintiffs further contend that such a display is not a "use" of the property within the meaning of § 301.0(b) because no cash register is present outside and it is not a point of sale to any consumer, and therefore such a display is "no different than outdoor furniture at a person's home." The plaintiffs claim that if such a use is nonconforming, then it is a legal nonconforming use and was never abandoned, terminated or changed.
A nonconformity is defined as a "use or structure prohibited by the zoning regulations but . . . permitted because of its existence at the time that the regulations are adopted."Adolphson v. Zoning Board of Appeals, 205 Conn. 703, 710,535 A.2d 799 (1988). In order to be considered a nonconforming use, the use must be: (1) lawful; and (2) in existence at the time the zoning regulations making the use nonconforming were enacted. Cummings v. Tripp, 204 Conn. 67, 91-92, 527 A.2d 230
(1987). The rule of nonconforming use protects the "right" of a user to continue the same use of the property as existed prior to the adoption of the zoning regulations. Cioffoletti v.Planning and Zoning Commission, 24 Conn. App. 5, 8,584 A.2d 1200 (1991). An existing nonconformity is a vested right that adheres to the land. Adolphson v. Zoning Board of Appeals, supra, 205 Conn. 712. A purchaser, who takes the property knowing that the regulations are inconsistent with the existing use, does not forfeit this right. Id.
The party claiming the benefit of a nonconforming use bears the burden of proving that the nonconforming use is valid.Connecticut Resources Recovery Authority v. Planning ZoningCommission, 225 Conn. 731, 626 A.2d 705 (1993). "The legality of an extension of a nonconforming use is essentially a question of fact." Id.
A nonconforming use may be abandoned. See Magnano v.Zoning Board of Appeals, 188 Conn. 225, 228, 499 A.2d 148
(1982). In order to establish abandonment of a nonconforming use, the owner must intend to permanently relinquish the use. CT Page 11127-P Id. The mere discontinuance of a nonconforming use, without the intent to abandon it, is insufficient. Id.; Friedson v.Westport, 181 Conn. 230, 234, 435 A.2d 17 (1980). Once a legal nonconforming use is abandoned it cannot be revived. WestHartford v. Rechel, 190 Conn. 114, 117, 459 A.2d 1015 (1983).
The plaintiffs have not met their burden of showing that the outdoor display of furniture for retail sale is not a "use" of the property. The plaintiffs' claim that no cash register is present outside does not change the fact that the furniture is on display for retail sale purposes, and thus is not the same as outdoor furniture at a residence, as the plaintiffs argue. The court finds no grounds to sustain the appeal based upon the plaintiffs' claim that the outdoor display of furniture for sale is not a "use" of the property.
At the June 1, 1992 hearing, the ZEO stated that the basis of the cease and desist order was the unlawful expansion of a nonconforming use in that RR had expanded its display area to the front and sides of the building. The ZEO stated that in his opinion there was no legal nonconformity that would allow a permanent outdoor sales area. The ZEO also stated that he had personally observed the property for the past six years, and while he had observed the odd chair or two, or small item of furniture under the front overhang, there had been no permanent, semi-permanent or temporary outdoor sales display area.
The record reveals evidence upon which the ZBA could have relied to find that the plaintiffs did not establish: (1) that their outdoor display was a permitted use; or (2) that it was not an illegal expansion or movement of a nonconforming use under the Ridgefield Zoning Regulations. The evidence in the record reflects that in 1990, the plaintiffs submitted a subdivision application to the planning and zoning commission. The property was divided in half, creating two separate lots, one containing a cement block building formerly used to manufacture candles and for retail sales, but now used as an auto body shop, and one lot containing the retail/apartment building in which RR is a tenant. As part of the subdivision that was approved by the planning and zoning commission, the retail space on the lot containing the retail/apartment building required seventeen parking spaces, and the approved site plan and subdivision map provided seventeen spaces. The outdoor display in the parking lot creates a "considerable parking deficit on this property." The record reflects that at least CT Page 11127-Q one of the areas in which Scribner, the owner of the property in 1976, claimed to have an outdoor display prior to 1976 is now the parking lot, a conforming use, as the result of the plaintiffs' subdivision of the property. One of the ZBA members noted that the planning and zoning commission approved the subdivision application on the basis of a certain amount of space being dedicated to parking. He further stated that "there is certainly one way to abandon something and that is to convert it to something else. And you have got a thing there where you converted it to a parking place." The ZBA could have reasonably found that submitting a subdivision application for the property showing the required seventeen parking spaces for the lot containing the RR building, evidences an intent by the plaintiffs to abandon any right that they may have had to an outdoor display as a nonconforming use of that area when they expressly designated it a parking area, a conforming use. The ZBA could have reasonably found that in purposefully allocating seventeen spaces for parking on the subdivision map in order to obtain subdivision approval by the planning and zoning commission, the plaintiffs had shown the requisite intent to abandon any nonconforming use of that space for purposes other than the parking proposed.
The affidavits of Scribner and other previous owners and a previous employee show that there were outdoor displays over portions of the entire property prior to the subdivision in 1990. It is not clear exactly what the extent of the displays were as of February 1976, when the retail use of the property became nonconforming, nor is it clear exactly where such displays were placed as of that date. With respect to areas Scribner marked on a map accompanying his affidavit, one of the ZBA members remarked: "You appear to be storing furniture of sorts in the area marked `Parcel B — Parking Area' on this map. Mr. Scribner has relatively clearly defined areas where he stored things and these areas aren't the same. How do you justify things in the parking lot. . . . He shows here very clearly where he had the stuff. And he got it colored, and he got it marked what it is and he got it all pretty well drawn out here. And you have got stuff where he said he didn't have anything. . . . There seem to be significant differences from where you have things and where Scribner says he recalled having things. How do you justify that?". The plaintiffs' attorney responded that he could show the "help" the map and say to put things in an approximate location, but he "can't be responsible for a clerk or for an office person or for a sales person moving CT Page 11127-R something on a temporary basis." Another ZBA member noted that no one "would say that [the property] never had an outdoor display. I don't think anyone on the board would say that. But the board members, I think, might find that some of the areas used for outdoor display have, in fact, been abandoned. And I think there is adequate evidence in the record to sustain a position like that." An attorney representing a neighboring resident noted that the resident "described the premises adjacent to him now as a flea market. Every day he goes out, the display grows. It creeps closer and closer to his property. Whatever character that particular area had is being lost by this expansion. There is no way that this board can't believe that there is an expansion of a use going on with R R's use of this property." Evidence in the record supports the ZBA's conclusion that the outdoor display on the property was an illegal expansion of a nonconforming use to areas of the property that had not contained an outdoor display, and that the ZEO therefore did not err in issuing the cease and desist order.
The plaintiffs claim that the application of the zoning regulations by the ZEO and the ZBA was a violation of its constitutional rights to equal protection. The plaintiffs argue that their property has been treated differently from the property at 714 Danbury Road and numerous other properties in Ridgefield where outdoor displays are present. Pursuant to this court's decision allowing additional evidence regarding this claim, the plaintiffs presented documentary evidence and testimony at the hearing before this court in support of their claim of a pattern of discrimination.
The fourteenth amendment to the U.S. Constitution provides in pertinent part: "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws." Article first, section 20 of the Connecticut Constitution provides: "[n]o person shall be denied equal protection of the law . . . ."
"The equal protection provisions of [the] state constitution require `the uniform treatment of persons standing in the same relation to the governmental action questioned or challenged.'" (Citations omitted.) Broadley v. Board ofEducation, 229 Conn. 1, 8, ___ A.2d ___ (1994). "[I]n areas of social and economic policy, a . . . classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection CT Page 11127-S challenge if there is any reasonably conceivable state of the facts that could provide a rational basis for the classification." Id., 8-9; see Gregory v. Ashcroft, ___ U.S. ___111 S.Ct. 2395, 115 L.Ed.2d 410 (1993) (construing the federal provision).
"Mere laxity in the administration of the law, no matter how long continued, is not and cannot be held to be a denial of the equal protection of the law. To establish arbitrary discrimination inimical to constitutional equality, there must be something more, something which in effect amounts to an intentional violation of the essential principle of practical uniformity." (Citations omitted.) Bianco v. Darien, 157 Conn. 548,559-60, 248 A.2d 898 (1969). "For the plaintiffs to prevail, they must show a pattern of discrimination, consciously practiced." Id., 550.
As to the 714 Danbury Road property, at the public hearing before the ZBA, one of the ZBA members noted that there was nothing to indicate that the ZEO would not issue a cease and desist order against the 714 Danbury Road property in the future. The record also reveals a letter to the plaintiffs' attorney from the ZEO dated March 18, 1992 regarding the ZEO's decision not to issue a cease and desist order on the property at 714 Danbury Road. The letter stated, "[i]n 1977 based on a variance granted to said property and the interpretation of the variance and the zoning regulations, a Site Plan Approval was granted to 714 Danbury Road for outdoor storage and display of merchandise (swimming pools) being offered for sale . . . . This use has continued at this location for the past fifteen years. The fact that the merchandise offered for sale is not exactly the same as in 1977 is not considered a change of use." With respect to other properties listed by the plaintiffs, at the hearing before this court Town Planner Oswald Inglese testified that in zones where retail sales are permitted as of right, rather than as a nonconforming use, there is no prohibition against outdoor displays.
A review of the record and the evidence presented at the hearing before the court show no "pattern of discrimination, consciously practiced." The ZBA provided rational reasons for not ordering the other businesses cited by the plaintiffs to cease and desist from maintaining outdoor displays, and the plaintiffs have provided no sufficient evidentiary basis for their apparent claim that the ZEO and ZBA are somehow seeking to CT Page 11127-T selectively enforce the zoning regulations so as to intentionally deprive them of a lawful use of their property. In order to show a pattern of discrimination, the plaintiffs must do more than simply list a number of properties upon which outdoor displays exist, or conclude that because property across the street at 714 Danbury Road has an outdoor display and no cease and desist order has been issued, the zoning regulations are being selectively enforced against the plaintiffs. The plaintiffs have failed to meet their burden of showing selective enforcement of the zoning regulations such that their right to equal protection has been violated.
For all the foregoing reasons, the plaintiffs' appeal is dismissed.
FLYNN, J.